(206 P.3d 57)
100,845

## In The Interest of M.F., A Child Under The Age of 18 Years.

Opinion filed May 1, 2009.

*John W. Leighty,* of Olathe, for appellant natural mother.

*Steven J. Obermeier,* assistant district attorney, and *Stephen M. Howe,* district attorney, for appellee State of Kansas.

*Dennis J. Stanchik,* of Olathe, guardian ad litem.

Before RULON, C.J., GREENE and HILL, JJ.

RULON, C.J.: S.F., the biological mother of M.F., appeals the termination of her parental rights to M.F., arguing the district court failed to follow the Indian Child Welfare Act (ICWA), 25 U.S.C. § 1901 *et seq.* (2006), in the proceedings which ultimately resulted in the termination of S.F.'s parental rights. We conclude the ICWA

was not properly followed and reverse and remand for further proceedings.

On November 6, 2006, the State filed a petition alleging M.F. was a child in need of care (CINC). At that time, the State had no information regarding whether M.F. had Native American heritage. The district court appointed a guardian ad litem (GAL) for M.F. and held a custody hearing the next day. M.F.'s alleged father, D.J., appeared at the hearing despite the fact he was not listed on M.F.'s birth certificate. S.F. did not appear. The district court ordered the State to complete service on the mother. The State requested temporary custody of M.F. because of S.F.'s homelessness and possible drug use, because S.F. abandoned M.F. at the hospital, and because there was a question of paternity and whether the alleged father could care for M.F. The district court ordered genetic testing and determined an emergency existed to place M.F. in the custody of the Department of Social and Rehabilitation Services (SRS) with the authority to find suitable placement.

The district court later became aware of M.F.'s possible Native American heritage and sent a notice of the CINC proceedings to the Northern Arapaho Tribe (Tribe). The State informed the district court genetic testing confirmed D.J. was M.F.'s father. D.J. did not contest the claims in the petition that M.F. was a CINC, and a trial was set for a CINC determination as to the mother.

Eventually, the Tribe sent notice of the Tribe's intent to intervene in the case. The Tribe requested to be notified of all hearings and actions in the matter. The State filed the Tribe's notice with the district court. Included with the Tribe's notice was a document stating a Tribe enrollment technician had determined M.F. was not enrolled with the Tribe, but M.F. would be eligible for enrollment.

Because S.F. had not stipulated M.F. was a CINC, the district court scheduled a hearing to make that determination. At the beginning of the hearing, S.F.'s counsel reminded the district court the ICWA applied. The State was unaware of whether the Tribe had been notified of the hearing. The GAL argued the Tribe had nonetheless received proper notice so the hearing could proceed. However, the GAL argued the district court should apply the

ICWA's higher standard of proof. S.F.'s counsel agreed if the district court applied the higher standard of proof such proof would sufficiently comply with the ICWA. The district court stated: "I think out of an abundance of caution we'll go ahead and apply the other standard. I'm not sure that is absolutely necessary, but it is not going to hurt anything to apply that higher standard. We'll go ahead and proceed today."

The only testimony offered at the hearing was the social worker who was the case manager for M.F.'s case. At the time of the hearing, M.F. had been hospitalized for 2 months. According to the case manager, S.F. had not called to check on M.F. and did not know M.F. was hospitalized. The case manager testified there was an element of danger and risk to M.F. by S.F. not responding to the hospital because a potential caregiver would need to learn how to care for M.F. after M.F. was released from the hospital. The State argued the evidence complied with the ICWA standard of proof beyond a reasonable doubt that M.F. was in danger and needed immediate placement. The GAL additionally argued there was good cause for departing from the ICWA's placement preferences because neither parent was capable of handling M.F. or providing for M.F.'s special needs; no extended family members had come forward; and there was nothing more than an indication the Tribe would intervene. S.F.'s attorney argued the district court should apply the ICWA standard, which required testimony by an ICWA qualified expert, and the case manager who testified was not a qualified expert. The State's expert did not testify she had ever dealt with Indian issues or Indian children. The State contended it had met an exception under the ICWA by showing dangerousness, so there was no need for testimony from an expert in Indian child welfare. The State claimed it just needed an expert in child welfare.

The district court found the State had met its burden, and the case manager testified appropriately as an expert in the matter. Additionally, the district court found the evidence was clear beyond a reasonable doubt M.F. was in danger and out-of-home placement was immediately necessary for the child. The court held there was good cause to depart from any Indian placement because neither

parent could care for the child, no family had come forward, and the Tribe had done nothing but indicate a desire to intervene. The district court found M.F. was a CINC pursuant to K.S.A. 38-1502(a)(2) and set the matter over for disposition after finding continued out-of-home placement was necessary. The district court ordered notice be given to the Tribe. Importantly, the district court *never* issued a journal entry adjudicating M.F. a CINC.

Eventually, the State filed a motion to terminate the parental rights of S.F. and D.J., or for appointment of a permanent custodian. The district court filed a permanency plan in which it found reintegration of the family was not a viable alternative because M.F. had been in SRS custody since birth; M.F. had a serious medical condition; and there was a lack of effort by the parents.

The district court held a pretrial hearing and counsel for S.F. stated there was no journal entry for the CINC finding and there had not been any expert testimony, which was required in order make a CINC determination under the ICWA. The district court directed the State to journalize the CINC finding. However, no such journal entry is contained in this record.

S.F. filed a motion to transfer jurisdiction to the Tribal Court of the Northern Arapaho Tribe (Tribal Court) pursuant to 25 U.S.C. § 1911(b) (2006). The GAL argued good cause existed not to transfer jurisdiction of the case because the motion was untimely and it would be inconvenient to transfer the case to Wyoming, the location of the Tribal Court. The district court held a hearing on S.F.'s motion to transfer, and ultimately, the district court denied the motion.

At the hearing on the issue of termination of parental rights, S.F. appeared. Before evidence was presented, the district court noted a representative from the Tribe had contacted the district court and requested to participate in the trial by telephone, but the court was unable to arrange for such participation. S.F.'s counsel again argued the district court was not complying with the ICWA. Testimony was taken from Lindsey Howes, a case manager who had been involved in M.F.'s case since M.F. was placed in State custody. Howes recited the case history and all the contacts she had with S.F. and D.J. In Howes' opinion, M.F. needed permanency

through an adoptive home that could provide for M.F.'s medical care and needs. Howes did not believe S.F. could meet M.F.'s needs, which required a parenting ability beyond even normal parenting abilities due to M.F.'s extreme medical needs.

S.F. testified at trial she knew of two family members who were interested in caring for M.F. if the district court determined S.F. could not regain custody of M.F.

Ultimately, the district court entered an order terminating the parental rights of S.F. and D.J. to M.F. S.F. timely appeals. D.J. does not appeal.

On appeal, S.F. argues the district court failed to comply with the ICWA in any of the proceedings before the district court. This issue requires us to interpret various statutory provisions of the ICWA, and interpretation of a statute is a question of law over which appellate courts have unlimited review. *In re M.B.*, 39 Kan. App. 2d 31, 36, 176 P.3d 977 (2008).

The Kansas Code for Care of Children, K.S.A. 38-1501 *et seq.*, was in effect at the time these proceedings were initiated and applied to proceedings concerning any child who appeared to be a CINC. See K.S.A. 38-1503(a). The Revised Kansas Code for Care of Children, K.S.A. 2008 Supp. 38-2201 *et seq.*, became effective January 1, 2007, and applies to proceedings concerning a child that is possibly a CINC. See K.S.A. 2008 Supp. 38-2203(a). However, neither mentioned code applies when the proceedings involve an Indian child, because in those instances, the ICWA applies. K.S.A. 38-1503(a); K.S.A. 2008 Supp. 38-2203(a). The ICWA defines an "Indian child" as an unmarried person under the age of 18 who is either a tribe member or who is eligible for tribe membership and is the biological child of a tribe member. 25 U.S.C. § 1903(4) (2006). Here, the Tribe determined M.F. was eligible for Tribe membership, and no one disputes on appeal that M.F. is an Indian child or that the ICWA applies.

The State argues we do not need to determine whether the ICWA was properly followed because S.F. failed to argue these issues before the district court. We disagree. S.F. argued at least twice the district court had not relied on the necessary expert testimony in making the CINC adjudication. This issue was properly

preserved for appeal, and in any event, this issue can be raised for the first time on appeal because 25 U.S.C. §1914 states that "any parent . . . may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of [25 U.S.C. §§ 1911, 1912, and 1913]." See *In re S.M.H.*, 33 Kan. App. 2d 424, 430, 103 P.3d 976, *rev. denied* 279 Kan. 1006 (2005).

The ICWA establishes both jurisdictional and substantive procedures for custody determinations of Indian children. *In re A.P.*, 25 Kan. App. 2d 268, 274, 961 P.2d 706 (1998). Jurisdictionally, S.F. argues the district court erred in denying her motion to transfer jurisdiction to the Tribe. Tribal courts have jurisdiction in custody cases involving children who reside on the reservation or who are wards of the tribe. 25 U.S.C. § 1911(a). Concurrent jurisdiction exists with state courts over children not domiciled on the reservation. 25 Kan. App. 2d at 274. Cases involving children not domiciled on the reservation shall be transferred to the jurisdiction of the tribe upon a request by either parent or the child's tribe, absent an objection by either parent, declination by the tribal court, or good cause not to transfer. 25 U.S.C. § 1911(b).

In reviewing the district court's decision to decline to transfer jurisdiction, we determine whether there is clear and convincing evidence to support the district court's determination there was good cause for the state trial court to refuse to transfer to the tribal court. See *In re A.P.*, 25 Kan. App. 2d at 276-77 (Upon review of the congressional intent, we conclude the standard most consistent with the ICWA requires clear and convincing evidence of good cause for a state trial court to refuse to transfer to the tribal court."). Consequently, we must determine whether, after viewing all the evidence in the light most favorable to the State, there was sufficient evidence from which a rational factfinder could have found it highly probable that good cause existed not to transfer jurisdiction. See *In re B.D.-Y.*, 286 Kan. 686, 705-06, 187 P.3d 594 (2008).

Although the ICWA does not define "good cause" to refuse a transfer request, the Bureau of Indian Affairs (BIA) has adopted criteria to use when making a good cause determination. Included

in the reasons for finding good cause not to transfer exists are if "[t]he proceeding was at an advanced stage when the petition to transfer was received and the petitioner did not file the petition promptly after receiving notice of the hearing" and if "[t]he evidence necessary to decide the case could not be adequately presented in the tribal court without undue hardship to the parties or the witnesses." 44 Fed. Reg. 67,591 (1979); see 25 Kan. App. 2d at 275.

Here, the district court cited the applicable BIA guidelines and found good cause existed not to transfer because the proceedings were at an advanced stage; the motion was untimely; and the case could not be presented in the Tribal Court without undue hardship to the parties and witnesses. We conclude the district court's decision is supported by clear and convincing evidence. S.F. did not file her motion to transfer jurisdiction until 15 months after the proceedings against her interests first began. Transfer to a court in Wyoming at such a late stage in the process would have created an undue hardship. Furthermore, the record on appeal reveals while the Tribe did not expressly decline jurisdiction of the case, the Tribe withdrew its own request to have the case transferred to its jurisdiction, which further supports the district court's decision not to transfer jurisdiction of the case. See 25 Kan. App. 2d at 275-76 (finding that when the tribe was aware of the case and elected not to intervene, the failure to intervene could not be considered a declination of jurisdiction, but it could be used to support a finding of good cause not to transfer the case).

S.F.'s remaining arguments concern the district court's failure to follow the ICWA's substantive procedures. This court has adopted a two-step process for dealing with the termination of parental rights when the ICWA applies. Kansas statutory law for termination of parental rights is applied first, and then the ICWA standards are applied. See *In re S.M.H.*, 33 Kan. App. 2d at 431. Here, regardless of whether the district court followed Kansas statutes, clearly the district court failed to properly comply with the requirements of the ICWA.

Before an Indian child can be placed in foster care, it must be determined, based on clear and convincing evidence including tes-

timony by a qualified expert witness, that continued custody of the child by the parent "is likely to result in serious emotional or physical damage to the child." 25 U.S.C. § 1912(e) (2006). Before parental rights may be terminated, there must be a determination made, supported by evidence beyond a reasonable doubt including testimony of a qualified expert witness, "that the continued custody of the child by the parent . . . is likely to result in serious emotional or physical damage to the child." 25 U.S.C. § 1912(f). Furthermore, when the State is seeking to place an Indian child in foster care or is seeking termination of parental rights to an Indian child under state law, the State must "satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." 25 U.S.C. § 1912(d).

None of the above ICWA provisions were followed by the district court in this case despite S.F.'s counsel repeated requests the district court comply with the ICWA. The district court was aware the ICWA applied and was aware the ICWA required different standards than state law. However, the district court failed to journalize its CINC findings, so there is no evidence of compliance with the ICWA standards in that determination. Although there is a journal entry of the termination of parental rights, such determination was not supported by proper evidence. The witness who testified at the CINC hearing did not testify she was a qualified expert in determining whether an Indian child will suffer damage by continuing to remain in the custody of his parents. The same witness was the only person testifying for the State at the termination of parental rights trial as well.

Testimony from a qualified expert witness is a requirement before a child can be adjudicated a CINC and before these parents' rights can be terminated. 25 U.S.C. § 1912(e) and (f). The BIA guidelines offer support for which individuals are "most likely to meet the requirements for a qualified expert witness for purposes of Indian child custody proceedings," including a "member of the Indian child's tribe who is recognized by the tribal community as knowledgeable in tribal customs as they pertain to family organi-

zation and childrearing practices," and a lay expert witness who has "substantial experience in the delivery of child and family services to Indians, and extensive knowledge of prevailing social and cultural standards and childrearing practices within the Indian child's tribe." 44 Fed. Reg. 67,593 (1979). Although the final example is simply a "professional person having substantial education and experience in the area of his or her specialty," our court has determined the ICWA requires a witness be qualified as an expert and the witness testify that evidence existed to support the State's burden under the ICWA. 44 Fed. Reg. 67,593 (1979). See *In re S.M.H.*, 33 Kan. App. 2d at 434-35. There was no such testimony in this case.

On appeal the State contends notice was given to the Tribe and the Tribe did not intervene. Notice is required to be given to the tribe pursuant to 25 U.S.C. § 1912(a), and pursuant to 25 U.S.C. § 1911(c), the tribe can intervene at any point in the proceedings. The ICWA still applies regardless of the failure of the Tribe to intervene.

Here the district court failed to comply with the requirements mandated by the ICWA for child custody proceedings involving an Indian child. We reverse and remand for the district court to comply with the ICWA's requirements at each step of the proceedings.