NOT DESIGNATED FOR PUBLICATION

No. 115,007

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of M.G.

MEMORANDUM OPINION

Appeal from Johnson District Court; KATHLEEN SLOAN, judge. Opinion filed August 5, 2016. Affirmed in part and remanded with directions.

*Catherine A. Zigtema*, of Zigtema Law Office LC, of Shawnee, for appellant natural father.

*Shawn E. Minihan*, assistant district attorney, and *Stephen M. Howe*, district attorney, for appellee.

Before MALONE, C.J., HILL and ATCHESON, JJ.

*Per Curiam*:  C.G. (Father) appeals the district court's order terminating his parental rights to his son, M.G. On appeal, Father claims that (1) the State's failure to comply with the strict notice requirements of the Indian Child Welfare Act (ICWA), 25 U.S.C. § 1901 *et seq.* (2012), deprived the court of jurisdiction to terminate his parental rights; (2) the State deprived him of his statutory and constitutional rights to due process by failing to give adequate notice of the grounds for terminating his parental rights; and (3) the district court erred by denying his motion to reopen evidence. We find no reversible error on Father's last two claims, but we agree the record fails to show that the district court complied with the ICWA notice requirements. Thus, we remand with directions for the district court to properly determine whether M.G. is an Indian child subject to the provisions of ICWA, but we otherwise affirm the district court's judgment terminating Father's parental rights.

1

FACTUAL AND PROCEDURAL BACKGROUND

On June 5, 2013, in the emergency room at Shawnee Mission Medical Center, B.B. (Mother) and Father informed police that during an argument, Mother had stabbed Father in the shoulder and he had punched her in the eye. M.G. was just over 15 months old at the time and had been present during the altercation. Although the State charged Mother with aggravated battery, Father later refused to testify against her.

As a result of these events, on July 8, 2013, the State filed a petition to adjudicate M.G. a child in need of care (CINC), alleging that M.G. was without adequate parental care, control or subsistence, a condition not due solely to lack of financial means; without the care or control necessary for his physical, mental, or emotional health; and he had been physically, mentally, or emotionally abused or neglected or sexually abused. The petition stated that it was unknown whether ICWA applied to the proceedings.

On November 26, 2013, the district court held a hearing, at which Mother and Father appeared in person and with counsel. At the hearing, the district court approved a 6-month informal supervision plan that required Mother and Father to maintain stable, adequate, clean, and orderly housing; notify KVC—a child welfare agency that works with Kansas' Department of Children and Family Services (DCF) on reintegration programs—of any changes in residence or employment; work with KVC on creating and enforcing structure at home; and provide appropriate supervision for M.G. at all times. Under the plan, Mother and Father also had to meet M.G.'s medical, dental, and vision needs; maintain stable income or seek adequate financial assistance; participate in mental health services and follow treatment recommendations; utilize KVC in-home services; submit to random UAs; follow court orders; learn and use appropriate parenting skills; provide documentation to KVC of their cooperation with the plan; discuss any problems complying with the plan; and sign all releases necessary to verify completion of plan tasks. Family Preservation Services, a program for families trying to overcome and

2

address concerns and issues while keeping children at home, agreed to help Mother and Father accomplish their tasks under the informal supervision plan.

At the initial stage of the informal supervision plan, Mother, Father, and M.G. were residing with Be.B. (Maternal Grandmother). In May 2014, Mother and Maternal Grandmother had an argument, possibly involving physical violence, which led the State to place M.G. in the temporary custody of DCF. At a hearing on May 19, 2014, the district court found that although KVC had made reasonable efforts to maintain the family and prevent M.G.'s removal from the home, those efforts had been unsuccessful and the family was homeless, with no appropriate home for M.G.

On June 2, 2014, the district court entered orders of adjudication and disposition in the CINC case. According to the journal entry, the district court found that ICWA was not applicable. The record on appeal does not contain a transcript of the June 2, 2014, hearing, so this court does not know how the district court reached its conclusion that ICWA was inapplicable. Mother and Father submitted no contest statements to the allegations in the petition and the district court adjudicated M.G. a CINC pursuant to K.S.A. 2015 Supp. 38-2202(d)(2). The dispositional goal was reintegration, and the district court set a 6-month reintegration plan but ordered M.G. to remain in DCF custody.

As part of the reintegration plan, DCF used Maternal Grandmother's house for supervised visitation because Mother and Father did not have stable housing of their own. In December 2014, a surprise visit to Maternal Grandmother's home found that the house was cluttered, with items blocking pathways through the home and cleaning supplies and prescription drugs out where they were accessible to a child. Erin Gutierrez, a KVC case manager who worked with the family, spoke to Mother and Father about her concerns, and she later testified that they seemed receptive to the feedback.

3

On January 20, 2015, the State filed a motion for a finding of unfitness and termination of both parents' parental rights. The State alleged unfitness "for one or more" of the statutory reasons listed in the motion, without identifying a specific legal basis. The motion laid out a history of the case, noting that M.G. was adjudicated a CINC in June 2014. The State alleged that since then, Father had failed to maintain safe and stable housing; Maternal Grandmother's home, where Mother and Father lived, was "in poor condition"; KVC workers had learned in December 2014 that Father had been charged in Texas with indecent liberties with a minor; and M.G.'s case had been pending for 18 months, with him in out-of-home placement for 7 months. The motion concluded: "After completing almost a year of Family Preservation services, [Father] and [Mother] have made little progress toward improving their circumstances and their situation has remained unchanged. [M.G.] deserves permanency and it is in his best interest to terminate parental rights or create a permanent custodianship."

At a hearing on April 6, 2015, Father asked for a continuance, which the State did not oppose and the district court granted. When the district court ordered the parents to submit to drug testing that day, both parents admitted they had taken prescription drugs for which they did not have prescriptions. A few minutes later, however, court reconvened because Father had tested positive for methamphetamine. Father admitted that he had lied to the judge. Maternal Grandmother asked the district court to consider her as a placement, but when asked if she would pass a drug test, Maternal Grandmother admitted that she too had used methamphetamine the past weekend.

On April 23, 2015, Father again tested positive for methamphetamine and amphetamines. Gutierrez later testified that Father also showed "concerning behaviors" at a visitation on that day: "his eyes were rolling in the back of his head[, h]e was dozing off, falling asleep, [and he] was not very interactive." After that, Mother and Father were required to submit a negative drug test 1 hour prior to any visitation; this requirement upset them and they stopped showing up for visitations. Their final visitation with M.G.

4

was on April 23, 2015; after that date, neither Mother nor Father submitted to drug testing or contacted Gutierrez again until after the start of the termination hearing.

The termination hearing began on July 15, 2015. Father was not present in person, but was represented by counsel, who asked the district court for a continuance because Father had indicated he would be present but had not yet arrived. The district court denied the request for continuance. Father's attorney then informed the district court that there appeared to be "an ICWA issue." The State's attorney responded: "Judge, I've served so many tribes, and we've not received any notification from any tribe that ICWA applies. . . . There's so many responses from tribes in this case. I just am concerned that this is just a delay tactic from a father that's not here." The district court, without elaborating, ruled that ICWA did not apply.

Prior to hearing testimony, the district court took judicial notice of the files in the CINC case. The State called Gutierrez as a witness. She testified about the requirements of the initial 6-month reintegration plan, then moved on to whether Father had complied with those requirements. Gutierrez testified that although the plan required Father to obtain and maintain a suitable home environment, Gutierrez did not receive proof that he had done so until after the reintegration plan had ended. At the time of the trial, Gutierrez had no idea where Father was living. Similarly, although Father had completed a required parenting class, he had not done so until after the reintegration plan had ended. Although Mother and Father had provided her with a transportation plan that required Maternal Grandmother to provide transportation, Gutierrez no longer felt that plan was viable.

Gutierrez further testified that Father had provided proof of employment during the reintegration plan, but she no longer believed that he was employed and she had not received proof of employment since February 2015. In addition, Gutierrez was concerned because Father had been in police custody recently. Gutierrez testified that once, after a

5

visit with Mother and Father that was supervised by Maternal Grandmother, M.G. returned to his foster placement dirty and upset.

Despite the requirement that Mother and Father submit budgets as part of the reintegration plan, the last budget Gutierrez had received was in February 2015, so she had no knowledge at the trial of their current household expenses and income. The reintegration plan also required drug testing, and although both parents were compliant with the tests in the beginning of the reintegration period, they largely stopped submitting to requested drug tests after the April 6, 2015, hearing, when both parents and Maternal Grandmother tested positive for methamphetamine and Father also tested positive for amphetamines. Gutierrez' final contact with Father was on April 23, 2015.

Gutierrez expressed concern about the parents possibly sharing prescription medication during the pendency of the case. Mother and Father had admitted to Gutierrez that they sometimes shared medication when they were prescribed the same substance. Father had given Gutierrez a medication update over 8 months earlier, but she had not received any additional information since the first update. Father also had not complied with recommendations for mental health treatment as required by the reintegration plan; it appeared that Father had not attended any recommended treatment sessions since August 4, 2014, nor had he completed a requested drug and alcohol assessment.

Overall, Gutierrez testified that the parents had failed their reintegration plan because of drug use, loss of their home, and lack of progress toward reintegration since April 6, 2015. Gutierrez testified that at the time of trial, M.G. was 3 years old and was doing quite well in his foster home placement. In addition, adoptive resources were available. Gutierrez believed that Father was not fit to parent M.G. because although he initially had shown significant progress, he had taken "many steps backwards and [is] not able to keep [M.G.] safe" because of his drug use, lack of housing, and ongoing domestic violence issues, circumstances which Gutierrez did not believe were likely to change in

6

the foreseeable future. Gutierrez believed it was in M.G.'s best interest to terminate Father's parental rights and allow M.G. to be adopted.

After Gutierrez' testimony, the district court took judicial notice of an eviction case involving both parents, and the State rested its case. Mother then testified on her own behalf. As relevant to this appeal, she testified that Father was employed cleaning office buildings and admitted that they recently had been evicted for nonpayment of rent. Mother testified that both she and Father remained committed to trying to fulfill their reintegration plan tasks but that they felt they had not received any support from KVC after April. She stated that they both had completed parenting classes. To explain Father's "concerning behavior" at the April 23, 2015, visit, Mother testified that at the time of that visit, Father was working varying shifts, so he was tired a lot of the time. By the time Mother finished testifying, it was 5 p.m., so the court continued the trial to another day.

The trial resumed on August 20, 2015. Father was personally present and represented by counsel. The State asked the district court, for the sake of clarification, to again rule that ICWA did not apply. With no objection from either Mother or Father, the district court again ruled that ICWA did not apply to the proceedings.

Father first called Maternal Grandmother as a witness. She testified that at the time of the trial, Mother and Father lived at her home with her boyfriend, her nephew, and her nephew's son. Maternal Grandmother testified that there was room in the 3-bedroom house for M.G. to live there as well. She proposed Mother and Father would move to the living room, M.G. would stay in the first bedroom, Maternal Grandmother's nephew would be in the second bedroom, his son would take the third bedroom, and Maternal Grandmother and her boyfriend would continue staying in the basement. Maternal Grandmother admitted that she had used drugs but testified that she was now clean, although she had not engaged in formal treatment.

7

Father testified on his own behalf. He explained that he had not been present for the first day of trial because his friend's truck had broken down and he did not arrive at Maternal Grandmother's house until 2:15 that afternoon. He had not continued on to the courthouse, even though it was within walking distance of Maternal Grandmother's house, because he thought the hearing was already over. Father then testified that, since the last hearing, he had completed a drug and alcohol evaluation but he could not enter into treatment at the recommended facility because he already was receiving services at Johnson County Mental Health (JCMH). The recommended facility referred him back to JCMH for substance abuse and mental health treatment. Father testified that he had not started treatment yet but was planning to go the following day.

Father testified that he was employed fulltime and worked with Maternal Grandmother's boyfriend. Father also stated that since the first day of the termination trial, he had met with KVC workers, submitted to a drug test, and had answered all the KVC workers' questions that he thought were relevant. Father refused to answer questions about drug use because he did not think they were relevant. As to his drug use, Father testified, "I am over that. I don't need to rehash all of that."

Father explained that he had not asked KVC to walk through his current home to check if it was safe because he did not trust KVC and because he had only finished fixing things up about 3 days earlier. He stated that he loved his children and would do anything for them. When asked why he had not completed all the tasks of his reintegration plan, he replied: "Just basically life. Life throws things at you and sometimes you are just not able to keep everything going in the right directions and sometimes you fall back."

On cross-examination, Father admitted that he might have been arrested three times while this case was pending, although he denied remembering being arrested. He then testified, however, that the arrests were for driving while suspended and failure to appear on the driving while suspended charge. Father also acknowledged that he had

8

been arrested on a fugitive warrant from Texas for "indecency of a child." At the end of the hearing, the district court took judicial notice of the case file in the case from Texas, but the case file is not included in the record on appeal.

Father testified that he had started using methamphetamines in 2001 and used for approximately 6 or 8 years before he quit. Father admitted to relapsing four or five times, but felt that nothing could make him relapse again. He did not believe that he needed drug and alcohol treatment, but he was willing to go through with it "just to make sure." He was not in therapy or counseling at the time of the trial, but he was taking prescription medication for his mental health conditions.

In rebuttal, the State called Gutierrez. She testified that since the last trial day just over a month earlier, Father had been required to take four drug tests and had submitted to three, testing positive for benzodiazepines each time. Father claimed to have a prescription for the medication but had not shown Gutierrez the prescription, despite her request to see it.

After completion of the evidence, the district court set closing argument for September 17, 2015. When the parties reconvened on that date, the district court did not have time to hear the arguments, so it continued the hearing to September 21, 2015. Prior to court adjourning, Father asked the district court to reopen evidence to allow him to submit evidence that since the last trial day—over a month prior—he had been involved in mental health and drug and alcohol treatment. The State and the guardian ad litem objected to Father reopening the evidence, and the district court denied the motion.

When the trial resumed on September 21, 2015, Father informed the district court that he had filed that morning a written motion to reopen evidence, renewing the oral motion the court had denied. The written motion stated that "Father would testify that he is engaged in ongoing treatment with Johnson County Mental Health to address his

9

substance abuse issues through their dual diagnosis program." The State and the guardian ad litem again objected to Father's motion to reopen evidence, and the district court again denied the motion. The parties then made their closing arguments.

The district court filed its memorandum decision on December 3, 2015. The district court found by clear and convincing evidence that Father was unfit pursuant to K.S.A. 2015 Supp. 38-2269(b)(7)—reasonable efforts by KVC case workers at reintegration were unsuccessful; K.S.A. 2015 Supp. 38-2269(b)(8)—Father "demonstrated a lack of effort to adjust [his] circumstances, conduct or conditions to meet the needs of [M.G.]"; K.S.A. 2015 Supp. 38-2269(c)(2)—Father's failure to maintain consistent visitation, contact, and communication with M.G. and KVC; and K.S.A. 2015 Supp. 38-2269(c)(3)—Father's failure to complete his reintegration plan. The district court also found that Father's unfitness was unlikely to change in the foreseeable future and that it was in M.G.'s best interests to terminate parental rights. Father timely appealed the district court's judgment.

On appeal, Father claims that (1) the State's failure to comply with the ICWA notice requirements deprived the district court of jurisdiction to terminate his parental rights; (2) the State deprived him of his statutory and constitutional rights to due process by failing to give adequate notice of the grounds for terminating his parental rights; and (3) the district court erred by denying his motion to reopen evidence. We initially will address Father's second and third claims, and we will address the ICWA issue last.

NOTICE OF THE GROUNDS FOR TERMINATING PARENTAL RIGHTS

Father claims the State deprived him of his statutory and constitutional rights to due process by failing to give adequate notice of the grounds for terminating his parental rights. In response, the State argues that Father failed to properly preserve this issue for

10

appeal. In the alternative, the State argues that Father received proper notice of the grounds for terminating his parental rights and any deficiency was harmless.

Initially, with regard to the State's preservation argument, we agree with the State that Father failed to object in the district court to the adequacy of the notice of the grounds for terminating his parental rights. Generally, issues not raised before the district court cannot be raised on appeal. See *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011). However, there are several exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal, including the following: (1) the newly asserted claim involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the judgment of the trial court may be upheld on appeal despite its reliance on the wrong ground or having assigned a wrong reason for its decision. *In re Estate of Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 (2008), *cert. denied* 555 U.S. 1178 (2009).

Father invokes the second exception, asking this court to consider this claim to prevent the denial of a fundamental right. Our Supreme Court previously has held that due process is a fundamental right that may satisfy the second exception to the general rule that parties may not raise issues for the first time on appeal. See *Kansas Dept. of SRS v. Paillet*, 270 Kan. 646, 650, 16 P.3d 962 (2001). In addition, "parents have a fundamental right to make decisions regarding the care, custody, and control of their children. [Citation omitted.]" *Frazier v. Goudschaal*, 296 Kan. 730, 752-53, 295 P.3d 542 (2013). Based on this exception, we will consider for the first time on appeal Father's due process claim regarding the sufficiency of the motion to terminate his parental rights.

"Whether a party's constitutional right to due process has been violated is a question of law subject to de novo review. [Citations omitted.]" *In re Care & Treatment of Sykes*, 303 Kan. 820, 823, 367 P.3d 1244 (2016). In addition, "[i]nterpretation of

11

statutes and the question of whether due process was provided under specific circumstances raise issues of law, and an appellate court's review is unlimited. [Citations omitted.]" *Alliance Mortgage Co. v. Pastine*, 281 Kan. 1266, 1272, 136 P.3d 457 (2006).

K.S.A. 2015 Supp. 38-2266(b) provides: "Whenever a pleading is filed requesting termination of parental rights . . . , the pleading shall contain a statement of specific facts which are relied upon to support the request, including dates, times and locations to the extent known." Here, the motion to terminate Father's parental rights included a facts section that listed the procedural history of the case and noted several facts that had prompted the State to file the motion, including the poor condition of Maternal Grandmother's home, Father's charge in Texas for indecent liberties with a minor, the amount of time the CINC case had been pending, and Father's lack of "progress toward improving [his] circumstances."

Father argues that because the facts section did not mention "substance abuse, positive UAs[,] failure to complete substance abuse treatment," or lack of visitation, the State deprived him of his statutory and constitutional rights to due process by failing to give adequate notice of the grounds for terminating his parental rights. Father also argues that the State's "allegation of every single possible statutory basis to support termination is insufficient to satisfy the specificity requirements of the statute."

"Due process requires that notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *In re L.S.*, 14 Kan. App. 2d 261, 263, 788 P.2d 875 (1990) (quoting *Mullane v. Central Hanover B. & T. Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 2d 865 [1950]). To be sufficient, the notice must give the party "a reasonable time to prepare a defense to the litigation." *In re H.C.*, 23 Kan. App. 2d 955, 961, 939 P.2d 937 (1997). Even more specifically, this court has held that "[a] motion for the termination of parental rights may sufficiently meet a parent's due process rights if the

12

motion gives the parent adequate notice and an opportunity to be heard to defend against the State's claims. [Citation omitted.]" *In re K.H.*, No. 106,322, 2012 WL 687975, at *7 (Kan. App. 2012) (unpublished opinion).

We take issue with the fact that the State's motion listed all 13 nonexclusive statutory factors that allow termination of parental rights under K.S.A. 2015 Supp. 38-2269(b) and (c). This court rejected a similar "shotgun" approach in *In re C.H.W.*, 26 Kan. App. 2d 413, 988 P.2d 276 (1999). In that case, the Kansas Department of Social and Rehabilitation Services (SRS) filed a motion to terminate parental rights that incorporated by reference 48 pages, including the filed petition in the case, journal entries from multiple hearings, and reports submitted to the court at those hearings. The motion's final paragraph asked the court to terminate parental rights "'pursuant to K.S.A. 38-1583 (a)(b)(2)(3)(4)(7)(8)(c)(1)(2)(3)(4)(d)(e).'" 26 Kan. App. 2d at 414. After an objection to the adequacy of the notice provided in the motion, the district court dismissed the motion and SRS appealed. In affirming the district court's decision to dismiss the motion, this court stated:

> "The procedure of incorporating entire reports by reference without making specific allegations in the pleading leaves parents and their attorneys to defend against all allegations in the reports or to choose certain allegations in the reports to defend against. By the latter approach, parents risk losing their children if they choose the wrong allegations to defend. By comparison, the probable value of requiring specific allegations in the motion as a procedural safeguard is strong since it eliminates the guesswork." 26 Kan. App. 2d at 419.

The court in *In re C.H.W.* focused on the State's attempt to incorporate 48 pages of attachments as a factual basis for a motion to terminate parental rights. However, the court's reasoning also undermines the sufficiency of the State's attempt to list every statutory factor as a basis for terminating Father's parental rights. By listing every factor in the statute without providing factual support for each factor, the State placed Father in

13

the position of either preparing to defend against all the identified statutory factors or running the risk of choosing the wrong allegations to defend against.

As to factual allegations, the State's motion to terminate parental rights listed the procedural history of the case and alleged that Father failed his reintegration plan and failed to provide stable housing for M.G. However, the motion failed to include any specific factual allegations about Father's positive UAs, failure to complete substance abuse treatment, and lack of visitation with M.G. Because the State ultimately presented substantial evidence on these allegations at the termination hearing, we conclude that the State failed to comply with the statutory and constitutional due process requirements for giving Father adequate notice of the grounds for terminating his parental rights.

Deprivation of due process is subject to the harmless error test for reversibility. See *State v. Hurley*, 303 Kan. 575, 583, 363 P.3d 1095 (2016). Because the error affects a constitutional right, the State bears the burden to convince this court "'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.,* proves there is no reasonable possibility that the error affected the verdict.' [Citation omitted.]" 303 Kan. at 583-84.

The appropriate remedy for the State's failure to give Father adequate notice of the grounds for terminating his parental rights would be to continue the hearing to allow Father sufficient time to respond to the allegations against him. As it turns out, albeit perhaps unintentionally, the district court already provided Father with this remedy. The State presented its entire case-in-chief on the first day of trial on July 15, 2015, and then rested. Because of the scheduling of the termination trial, over a month passed between the first day of the trial—during which the State submitted evidence about Father's failed drug tests, lack of visitation, and failure to complete required substance abuse and mental health treatment—and the second day of the trial on August 20, 2015—at which Father presented evidence to the court. Father addressed his substance abuse issues at length on

14

the second day of the trial. Father specifically testified that since the first day of trial, he had submitted to drug testing and had completed a drug and alcohol evaluation but had not yet started treatment. Father also addressed visitation issues with M.G. Thus, Father was allowed to address—and did address—all the evidence the State had presented to support termination of Father's parental rights.

Moreover, the district court did not base its decision to terminate Father's parental rights solely on the factors about which Father complains he received insufficient notice. The court also noted that reasonable efforts had failed to reintegrate M.G. with Father; that Father failed to maintain stable housing or employment; and that Father failed to adjust his circumstances, conditions, or conduct to meet M.G.'s needs. These are statutory factors that may be considered in terminating parental rights under K.S.A. 2015 Supp. 38-2269(b)(7)-(8), (c)(3), and Father received notice of these factors in the motion.

In light of the entire record, we conclude there is no reasonable possibility that any deficiency in notice to Father affected the termination of his parental rights. Thus, any error caused by inadequate notice of the grounds for termination was harmless and does not require reversal of the district court's decision to terminate Father's parental rights.

MOTION TO REOPEN EVIDENCE

Father also claims the district court erred by denying his motion to reopen evidence. The State responds that the district court did not err because the motion to reopen evidence was late, Father made an insufficient proffer of the evidence he wished to submit, and continuing the hearing to allow Father to admit additional evidence would have prejudiced M.G.

Kansas appellate courts review the district court's denial of a motion to reopen evidence for abuse of discretion. *State v. Murdock*, 286 Kan. 661, 672, 187 P.3d 1267

15

(2008). A district court abuses its discretion when it takes action that is "(1) arbitrary, fanciful, or unreasonable; (2) based on an error of law, or (3) based on an error of fact. [Citation omitted.]" *Garcia v. Ball*, 303 Kan. 560, 566, 363 P.3d 399 (2015). The party asserting that the district court abused its discretion bears the burden of showing such abuse of discretion. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013).

This court has reviewed a denial of a motion to reopen evidence in a termination of parental rights case by using the same standard used to review the denial of a motion to reopen evidence in a criminal trial. See, *e.g.*, *In re A.M.*, No. 111,113, 2014 WL 6676181, at *7 (Kan. App. 2014) (unpublished opinion). Father acknowledges that the district court "maintains broad discretion as to whether or not to re-open evidence." However, Father claims that the district court's refusal to reopen the evidence "was unreasonable and arbitrary and therefore an abuse of discretion."

A quick review of the relevant facts is helpful. The termination trial began on July 15, 2015, at which time the State presented its case-in-chief and rested. The remainder of that day consisted of Mother testifying on her own behalf. The second day of trial occurred on August 20, 2015, and Father presented his case, calling Maternal Grandmother and testifying on his own behalf. The State also called Gutierrez as a rebuttal witness. Father made no request to present any additional evidence.

Closing argument was set for September 17, 2015, but on that day the district court did not have time for a hearing, so it continued the matter to September 21, 2015. Prior to court adjournment, Father asked the district court to reopen evidence to allow him to present evidence that since the second day of trial—August 20—he had been participating in mental health and drug and alcohol treatment. The district court denied the motion. On September 21, 2015, Father filed a written motion to reopen evidence, renewing his oral motion. The written motion described the evidence that would be

16

offered as follows: "Father would testify that he is engaged in ongoing treatment with Johnson County Mental Health to address his substance abuse issues through their dual diagnosis program." The district court again denied the motion.

Father first points out that the CINC code holds no prohibition against reopening evidence. Father also notes that in order to terminate a parent's rights, a court must find the parent "unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." See K.S.A. 2015 Supp. 38-2269(a). By denying his request to reopen evidence, Father asserts the district court erroneously chose not to consider evidence that has a direct bearing on whether the conduct or conditions that rendered Father unfit were likely to change in the foreseeable future.

The State argues that Father made an insufficient proffer of the evidence that he intended to submit to the district court. K.S.A. 60-405 provides that a judgment or decision of the district court shall not be reversed by reason of the erroneous exclusion of evidence unless the proponent of the evidence either made known the substance of the evidence in a forum approved by the judge, or indicated the substance of the expected evidence by questions and answers.

Father's written motion to reopen the evidence asserted that "Father would testify that he is engaged in ongoing treatment with Johnson County Mental Health to address his substance abuse issues through their dual diagnosis program." Although this proffer indicates the subject matter of Father's proposed testimony, the proffer provides no information about the *substance* of the testimony and leaves many unanswered questions. Was Father attending all his treatment sessions? Was Father complying with all the terms and conditions of the treatment program? Was Father making progress in overcoming his long history of substance abuse and mental health issues? Did Father have any positive UAs in the last month? What was Father's long-term prognosis?

17

Father's proffer of the evidence that he intended to submit probably was sufficient to comply with K.S.A. 60-405 and to preserve this issue for appeal. Nevertheless, the party asserting that the district court abused its discretion bears the burden of showing such abuse of discretion. *Northern Natural Gas Co.*, 296 Kan. at 935. Father's vague proffer fails to provide this court with sufficient information for Father to meet his burden of establishing that the district court abused its discretion in denying the motion to reopen evidence. Although it certainly would have been within the district court's discretion to grant Father's motion to reopen the evidence, we are hard-pressed to find that no reasonable judge would have denied the motion and that the district court's decision was arbitrary, fanciful, or unreasonable. See *Garcia*, 303 Kan. at 566.

Finally, the State argues that even if the district court erred in denying the motion to reopen evidence, any error was harmless. The State acknowledges in its brief that the error may be declared harmless only when the party benefitting from the error proves beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, proves there is no reasonable possibility that the error affected the verdict. See *Hurley*, 303 Kan. at 583.

Here, Father makes no attempt on appeal to challenge the sufficiency of the evidence supporting the district court's decision to terminate his parental rights. M.G. was 3 years old at the time of the termination hearing and the case had been pending 24 months. Father acknowledged he had a problem using methamphetamine that dated back many years. He admitted to relapsing four or five times but felt that nothing could make him relapse again. Father tested positive for methamphetamine as recently as April 2015. When Father was interviewed by KVC workers after the first day of trial on July 15, 2015, Father refused to answer questions about drug use because he determined the questions were not "relevant." At the hearing on August 20, 2015, Father testified that he did not believe that he needed drug and alcohol treatment, but he was willing to go through with it "just to make sure." Under the circumstances, it is hard to imagine how

18

additional evidence that Father had been "engaged in ongoing treatment" in the month since the last hearing would have had any effect on the district court's ultimate decision.

Moreover, the district court's decision to terminate Father's parental rights was not based solely on his substance abuse issues. The evidence established that Father provided no stable housing for M.G. throughout the pendency of the case. Father also failed to provide proof of stable employment. There were domestic abuse issues in the family. Father had not attempted to visit M.G. since April 2015, and the caseworkers lost contact with him after that date. Father was arrested three times while the case was pending. Father acknowledged that there was a fugitive warrant from Texas charging him with indecent liberties of a child, but the record does not reflect the disposition of that case.

The State presented evidence of Father's unfitness that dated back for several years before the termination hearing. Father was given the opportunity to thoroughly address all the State's evidence when he testified on August 20, 2015. Even if the district court erred by denying Father's motion to reopen the evidence, based on the proffer of the evidence, we are convinced there is no reasonable possibility that the error affected the outcome of the trial in light of the entire record. Thus, any error was harmless and does not require us to reverse the district court's judgment terminating Father's parental rights.

FAILURE TO COMPLY WITH ICWA

Father also claims that the State failed to comply with ICWA's notice requirements by failing to send notice to the identified tribes by certified mail with return receipt requested. He contends that the State's failure requires this court to either invalidate the order terminating his parental rights or reverse and remand for further proceedings to ensure compliance with ICWA. The State admits that it did not comply with ICWA's notice requirements but asks this court to remand to the district court for a hearing to determine whether ICWA applies rather than simply reverse the termination order.

19

"In Kansas, proceedings concerning any child who may be a child in need of care are governed by the Revised Kansas Code for Care of Children, K.S.A. [2015] Supp. 38-2201 *et seq.*, 'except in those instances when the court knows or has reason to know that an Indian child is involved in the proceeding, in which case the Indian Child Welfare Act of 1978 [25 U.S.C. § 1901 *et seq.*][(ICWA)] applies.' K.S.A. [2015] Supp. 38-2203(a)." *In re M.F.*, 290 Kan. 142, 148-49, 225 P.3d 1177 (2010).

An "Indian child" is "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." See 25 U.S.C. § 1903(4) (2012); *In re M.F.*, 290 Kan. at 149 (using ICWA definition for Indian child to determine whether ICWA applied to Kansas CINC case). Under ICWA, a "party seeking the foster care placement of, or termination of parental rights to, an Indian child" must notify "the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention." 25 U.S.C. § 1912(a) (2012). Determining whether ICWA applies is a question of law over which an appellate court exercises unlimited review. See *In re A.J.S.*, 288 Kan. 429, 431-32, 204 P.3d 543 (2009).

The record on appeal is unclear as to what triggered the ICWA notice requirements in M.G.'s case. However, Father raised the issue of ICWA notice compliance prior to the start of the termination trial, pointing out that the parties were still awaiting responses to the tribal notices and arguing that until it was clear that ICWA did not apply, the trial should not proceed. By doing so, Father properly preserved this issue for appeal. The district court found that ICWA was not applicable, but the record does not reflect how the district court reached this conclusion.

Because the State now admits on appeal its failure to comply with ICWA's notice requirements, the only remaining question is the appropriate remedy. Father first argues that the State's failure to comply with ICWA's notice requirement deprived the district

20

court of jurisdiction to enter orders in the case. Thus, Father argues that this court must reverse the order terminating his parental rights.

The only case cited by Father to support this assertion is *In re M.H.*, 50 Kan. App. 2d 1162, 337 P.3d 711 (2014). In that case, a panel of this court found that had the State not added to the record on appeal documents showing it had complied with ICWA's notice requirements, "we would have been required either to reverse the district court's judgment . . . or to send the case back for further proceedings on the notice issue." 50 Kan. App. 2d at 1168. However, the court did not reach the question of an appropriate remedy because the State had added documents showing compliance to the record on appeal, so no relief was warranted. 50 Kan. App. 2d at 1168-69. *In re M.H.* does not address jurisdiction and the case does not support Father's assertion that failure to ensure compliance with ICWA's notice provisions divested the district court of jurisdiction.

In the alternative, Father argues that this court should reverse and remand for further proceedings for the district court to provide proper ICWA notice and determine whether ICWA applies. The State agrees with this disposition but argues that this court may remand for such proceedings without vacating the termination order. In support, the State points to *In re J.M.B.*, No. 112,578, 2015 WL 4460578 (Kan. App. 2015) (unpublished opinion), wherein this court determined that the proper remedy for a failure to comply with ICWA's notice requirements was remand for a hearing to determine whether the child in question was a member or was eligible to be a member of the tribe that had been identified in district court. 2015 WL 4460578, at *12. This court stated:

> "Under the circumstances presented here, the proper course of action is for the district
> court to conduct a hearing to determine if the tribe was properly notified of the
> proceedings and to decide, based upon the tribe's response, whether J.M.B. is an Indian
> child subject to the provisions of ICWA. If the district court finds based on proper
> evidence that J.M.B. is not an Indian child, then the termination of G.M.'s parental rights
> need not be set aside. In that instance, the district court can file a journal entry finding

21

that ICWA does not apply and reaffirm its prior decision terminating G.M.'s parental rights. But if the district court finds that J.M.B. is an Indian child, then the district court is directed to set aside the termination of G.M.'s parental rights and all further proceedings shall be governed by the provisions of ICWA." 2015 WL 4460578, at *12.

We note that the same district judge who presided over Father's case has been reversed in multiple termination of parental rights cases for failure to comply with ICWA. See *In re M.F.*, 41 Kan. App. 2d 927, 206 P.3d 57 (2009) (reversing and remanding for failure to comply with ICWA's requirement of qualified expert witnesses), *aff'd* 290 Kan. 142, 225 P.3d 1177 (2010); *In re M.B.*, 39 Kan. App. 2d 31, 36-42, 176 P.3d 977 (2008) (this court found that Judge Sloan had failed to comply with ICWA, but ultimately upheld the challenged ruling as right for the wrong reason); *In re J.M.B.*, 2015 WL 4460578 (reversing and remanding for failure to comply with ICWA). Father argues that the only way to get the district court's attention and ensure the judge's future compliance with ICWA is to set aside the order terminating his parental rights.

Although it certainly would be preferable for the district court to comply with ICWA requirements in the first instance, we find that the remedy applied in *In re J.M.B.* is logical and appropriate and should be applied herein. Thus, we conclude that this case must be remanded for the district court to conduct a hearing to determine if the tribes in question were properly notified of the proceedings and to decide, based on the tribes' responses, whether M.G. is an Indian child subject to the provisions of ICWA. If the district court finds based on proper evidence that M.G. is not an Indian child, then the termination of Father's parental rights need not be set aside. In that instance, the district court can file a journal entry finding that ICWA does not apply and reaffirm its prior decision terminating Father's parental rights. But if the district court finds that M.G. is an Indian child, then the district court is directed to set aside the termination of Father's parental rights and all further proceedings shall be governed by the provisions of ICWA.

22

Affirmed in part and remanded with directions.