899 P.2d 223 (1994)
The PEOPLE of the State of Colorado,
In the Interest of A.T.W.S., a Child,
Upon the Petition of the Denver Department of Social Services, Petitioner-Appellee,
and Concerning Robert Moore and Elizabeth Moore, Intervenors-Appellees, and
Leech Lake Band of the Minnesota Chippewa (Ojibwe) Tribe, Intervenor-Appellant,
and Concerning Teri Lynn Wakanabo f/k/a Teri Lynn Smith, Thomas William Morrison, John Doe, and All others claiming an interest in said Child, Respondents.
No. 93CA0708.
Colorado Court of Appeals, Div. III.
October 6, 1994.
Rehearing Denied December 22, 1994.
Certiorari Denied August 14, 1995.
*224 Pamela A. Gordon, guardian ad litem.
Daniel E. Muse, City Atty., Office of City Atty., Leah L. Audin, Asst. City Atty., Denver, for petitioner-appellee Denver Dept. of Social Services.
Allen B. Alderman, Denver, for intervenors-appellees.
Whiteing & Thompson, Sandra Hansen, Boulder, for intervenor-appellant.
M. Kathryn Bradley, Denver, for respondents.
Opinion by Judge PLANK.
In this dependency and neglect proceeding concerning A.S., a Native American child, the Leech Lake Band of Minnesota Chippewa Tribe (Tribe) appeals an order of the juvenile court which denied transfer of jurisdiction to a tribal court under the Indian Child Welfare Act (ICWA), 25 U.S.C. § 1901, et seq. (1988). We affirm.
On May 3, 1988, the Denver Department of Social Services (DDSS) filed a dependency and neglect petition concerning A.S., then about 15 months old, against T.L.W. (mother). Because the mother was a member of the Tribe, DDSS notified the Tribe of the proceedings pursuant to the ICWA.
In June 1988, the Tribe replied that it did not have a tribal court facility and therefore did not request a transfer of jurisdiction. There were no other communications between the Tribe and the DDSS concerning transfer until January 1992. Meanwhile, A.S. was placed in the temporary custody of his paternal aunt, who soon after returned the child to the custody of the state.
In November 1988, the juvenile court adjudicated A.S. to be dependent and neglected. In December, after a review hearing, A.S. was placed in the care of a foster family where he has remained. In addition, a treatment plan was designed to address the parental unfitness and alcohol dependency of the mother.
In October 1989, the juvenile court scheduled a permanency planning hearing for March 29, 1990. However, because of a variety of circumstances, this hearing did not occur. Then, on January 31, 1992, the Tribe entered its appearance for the first time and filed a motion to transfer jurisdiction to the tribal court of the Mille Lac Band of the Minnesota Chippewa Tribe. The Mille Lac Band agreed to allow the Tribe to try the case in Mille Lac Band tribal court.
Subsequently, both the permanency planning hearing and motion to transfer hearing were rescheduled for June 12, 1992. At this hearing, the juvenile court found that "good cause to the contrary" existed to retain jurisdiction in Colorado and denied the Tribe's motion to transfer.

I. Transfer of Jurisdiction
The Tribe argues that the trial court erred in determining that sufficient evidence existed to find "good cause to the contrary" to deny the request for transfer pursuant to 25 U.S.C. § 1901-1963 (1988) of the ICWA. We disagree.

A. The Indian Child Welfare Act
The purposes of the ICWA are to promote the best interests of Indian children and to protect the stability of Indian tribes. The ICWA is based on the presumption that the protection of an Indian child's relationship to the tribe is in the child's best interest. Chester County Department of Social Services v. Coleman, 296 S.C. 355, 372 S.E.2d 912 (Ct.App.1988). Additionally, there is a general presumption of jurisdiction favoring the tribal court for proceedings concerning an Indian child who is domiciled off the *225 reservation. Mississippi Choctaw Indian Band v. Holyfield, 490 U.S. 30, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989).
Here, because A.S. resides off the reservation, the state courts and the tribal courts share jurisdiction. 25 U.S.C. § 1911(b) (1988) states:
In any State court proceeding for foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: Provided, That such transfer shall be subject to declination by the tribal court of such tribe. (emphasis added)

B. Good Cause
The ICWA does not expressly define what constitutes a showing of good cause to deny a motion to transfer jurisdiction to a tribal court. In order to determine good cause, a court must exercise discretion in examining both the case facts and applicable guidelines. To assist in this decision, the Department of Interior/Bureau of Indian Affairs (BIA) promulgated interpretative "Guidelines for the State Courts; Indian Child Custody Proceedings." 44 Fed.Reg. 67,584, et seq. (Nov. 26, 1979). We note that these "administrative interpretations of statutory terms are given important but not controlling significance." Batterton v. Francis, 432 U.S. 416, 424, 97 S.Ct. 2399, 2405, 53 L.Ed.2d 448, 456 (1977).
The BIA guidelines at 44 Fed.Reg. 67,591 (1979) allow denial of transfer under the following circumstances:
(a) Good cause not to transfer the proceeding exists if the Indian child's tribe does not have a tribal court as defined by the Act to which the case can be transferred.
(b) Good cause not to transfer the proceeding may exist if any of the following circumstances exists:
(i) The proceeding was at an advanced stage when the petition to transfer was received and the petitioner did not file the petition promptly after receiving notice of the hearing.
(ii) The Indian child is over twelve years of age and objects to the transfer.
(iii) The evidence necessary to decide the case could not be adequately presented in the tribal court without undue hardship to the parties or the witnesses.
(iv) The parents of a child over five years of age are not available and the child has little or no contact with the child's tribe or members of the child's tribe.
Other jurisdictions have adopted the following procedural standards, which we here adopt as applicable in Colorado.
The burden of establishing good cause to deny transfer is upon the party opposed to the transfer. In re Armell, 194 Ill.App.3d 31, 141 Ill.Dec. 14, 550 N.E.2d 1060, cert. denied, 498 U.S. 940, 111 S.Ct. 345, 112 L.Ed.2d 310 (1990).
The determination of good cause is within the discretion of the juvenile court. In re Dependency & Neglect of A.L., 442 N.W.2d 233 (S.D.1989). All circumstances are examined to make a case by case determination. In re Wayne R.N., 107 N.M. 341, 757 P.2d 1333 (Ct.App.1988).
Here, in light of the BIA guidelines' parts b(i) and b(iii), quoted above, the trial court ruled that there was good cause to deny the Tribe's motion to transfer. The court held that the Tribe's motion was untimely and that, under the doctrine of forum non conveniens, Denver was a more appropriate forum.

C. Proper Denial of Transfer of Jurisdiction
The Tribe argues that the trial court erred in determining that its motion for transfer was untimely. According to the Tribe, because no final permanency planning hearing had occurred prior to its motion for transfer, the proceedings were not at an advanced stage; therefore, the Tribe asserts its motion was timely. We disagree.
*226 Whether a motion for transfer is timely must be determined on a case-by-case basis. The BIA provision governing timeliness is "designed to encourage the prompt exercise of the right to petition for transfer in order to avoid unnecessary delays." 44 Fed.Reg. 67,591 (1979).
The only appellate case in Colorado that has addressed an issue similar to the one here is People in Interest of J.L.P., 870 P.2d 1252 (Colo.App.1994). In that case, a division of this court affirmed the trial court's decision to transfer jurisdiction of a custody proceeding involving two Indian children to the tribal court, holding that a one-year delay did not render the request untimely. The division held that, because no permanency planning hearing had been conducted, the proceedings were not at an advanced stage.
Other jurisdictions have also addressed the issue of whether a tribe's request for transfer was timely. See In re Maricopa County Juvenile Action, 171 Ariz. 104, 828 P.2d 1245 (App.1991) (court of appeals affirmed the trial court's holding that petition to transfer was untimely because the Pueblo tribe filed the petition two years after receiving notice of dependency proceeding); In re Robert T., 246 Cal.Rptr. 168, 200 Cal.App.3d 657 (1988) (court denied transfer because the tribe delayed 16 months after receiving notice before it made its motion for transfer); In re Dependency & Neglect of A.L., supra (court of appeals affirmed trial court's decision not to transfer after a tribe delayed one year with notice before petitioning for transfer).
Our review of the trial court's decision not to transfer jurisdiction to the Tribe is limited to a determination of whether substantial evidence supports that court's findings. See People In Interest of J.L.P., supra.
In J.L.P., the division held that a one-year delay did not, as a matter of law, constitute good cause to refuse transfer because a permanency planning hearing had not occurred and the proceedings were not at an advanced stage. Conversely, although no permanency planning hearing has been conducted in this case, in our view, the proceedings here were at an advanced stage. See 44 Fed.Reg. 67,591(b)(i) (1988).
The record shows that approximately three and one half years passed from the time A.S. was removed from the mother's custody until the Tribe filed its motion for transfer. During that time, the child had been in the same foster care, with the exception of several months during which A.S.' paternal aunt had custody.
Additionally, during this period, the DDSS and foster family took substantial steps to terminate parental rights and conduct a permanency planning hearing for A.S.
For example, in November 1988, upon the petition of the DDSS, the juvenile court adjudicated A.S. as being dependent and neglected. In March 1990, the DDSS filed a motion for termination. In July 1990 and November 1990, respectively, the foster parents and the Tribe were granted intervenor status. The Tribe at that time did not file a motion to transfer. The DDSS then withdrew its motion for termination and presented a report indicating no attachment existed between A.S. and mother and that A.S. would suffer irreparable damage if moved from the foster parents' home.
In June 1991, the foster parents filed a motion for permanency planning and custody hearing which was then scheduled for January 31, 1992. On January 31, 1992, the Tribe entered its appearance for the first time and filed a motion to transfer jurisdiction to a tribal court. Subsequently, both the permanency planning and custody hearing and motion to transfer hearing were rescheduled for June 12, 1992.
In June, rather than proceed with the permanency planning and custody hearing, the juvenile court ordered A.S., the foster parents, the mother, and the mother's other children to be evaluated by the National Center for American Indian and Alaskan Native Mental Health Research. Both the transfer and permanency planning hearings were reset for October 13, 1992. Because the mother failed to comply with the court ordered evaluation, the hearing was reset once again for January 25, 1993. In January, although the mother had not complied *227 with the scheduled evaluation, the court proceeded with the transfer motion.
Similar to the facts in In re Robert T., supra, here, the Tribe did not indicate any interest in the proceedings until the DDSS had moved for termination and the foster parents pursued a permanency planning hearing. Additionally, the record shows that A.S. had been in the same off-reservation, non-Indian foster care home for over four years. See In re Maricopa County Juvenile Action, supra, at 1245 ("[T]he pueblo [tribe] had been notified of all proceedings, yet waited over two years to petition for transfer, during which time the child bonded to her foster adoptive family and planning for child's adoption had begun.")
In light of these facts, we conclude that the trial court did not abuse its discretion in determining that because the proceedings were at an advanced stage and the Tribe's motion was untimely, jurisdiction should be maintained by the Denver court.

II. Best Interests of the Child
Lastly, the Tribe claims the court erred in allowing evidence concerning A.S.' best interest to be admitted for the purpose of determining whether the state or tribal court would adjudicate a child custody proceeding involving an Indian child.
In Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 53-54, 109 S.Ct. 1597, 1611, 104 L.Ed.2d 29, 49-50 (1989), the United States Supreme Court stated:
Whatever feelings we might have as to where [the Indian children] should live, however, it is not for us to decide that question. We have been asked to decide a legal question of who should make the custody determination concerning these childrennot what the outcome of that determination should be.... It is not ours to say whether the trauma that might result from removing these children from their adoptive family should outweigh the interest of the tribeand perhaps the children themselves in having them raised as part of the Choctaw community.
In its order, the trial court recognized that there is a split in authority "whether or not the best interest of the child constitutes good cause not to transfer a proceeding to tribal court." Yet, the trial court went on to say: "[I]t is not necessary ... for the court to determine what is in the best interest of the child or whether to apply this standard as a part of its decision today." We agree that the best interests standard was not a factor in the court's ruling. See People in Interest of J.L.P., supra (holding that the best interests of the child should not be considered in evaluating transfers under the ICWA).
Although the parties may have introduced evidence regarding the best interest of A.S. at the transfer hearing, the trial court's ruling was based on other factors such as the timeliness of the Tribe's motion for transfer.
We have considered the Tribe's remaining assertions of error and find them to be without merit.
Accordingly, the trial court's denial of the Tribe's motion to transfer jurisdiction was not an abuse of discretion.
Order affirmed.
JONES and KAPELKE, JJ., concur.