2013 COA 73

The PEOPLE of the State of Colorado,
Petitioner-Appellee,

IN the INTEREST OF T.E.R., a Child,

and

Concerning T.P.C.-J. and T.M.R.,
Respondents-Appellants.

Court of Appeals No. 12CA2196

Colorado Court of Appeals,
Div. IV.

Announced May 9, 2013

Douglas J. Friednash, City Attorney, Laura Grzetic Eibsen, Assistant City Attorney, Denver, Colorado, for Petitioner–Appellee.

Heather M. Gwinn Pabon, Denver, Jeffrey C. Koy, Elizabeth Fordyce, Guardians Ad Litem.

Law Office of Lisa M. Horvath, LLC, Lisa M. Horvath, Denver, Colorado, for Respondent–Appellant T.P.C.-J.

Davide C. Migliaccio, Colorado Springs, Colorado, for Respondent–Appellant T.M.R.

Opinion by JUDGE WEBB

¶ 1 In this dependency and neglect proceeding, T.M.R. (mother) and T.P.C.-J. (father) appeal from the order denying transfer of jurisdiction to a tribal court under 25 U.S.C. section 1911(b) of the Indian Child Welfare Act (ICWA). Father also appeals the judgment terminating the parent-child legal relationship between him and his child, T.E.R. We affirm.

## I. Background

¶ 2 In September 2011, the Department of Human Services of the City and County of Denver (Department) filed a petition in dependency and neglect based on mother's substance abuse and mental health issues, and on father's incarceration. In October 2011, the Department sent a notice to the Sault Ste. Marie Tribe of Chippewa (Tribe) pursuant to the ICWA based on mother's report that she was registered with the Tribe. The Tribe responded that it intended to intervene. Before the Tribe did so, the juvenile court adjudicated T.E.R. dependent and neglected and adopted treatment plans for mother and father.

¶ 3 In May 2012, the Tribe moved to intervene, alleging that T.E.R. was eligible for membership. The juvenile court granted the motion. Thereafter, the Department moved to terminate mother's and father's parental rights.

¶ 4 In July 2012, mother moved to transfer jurisdiction to tribal court. The Department and the guardian ad litem (GAL) opposed the motion, arguing that good cause existed to deny the transfer because the case was at an advanced stage, and the case could not be adequately presented in the tribal court without undue hardship to the parties or the witnesses. The Tribe took no position.

¶ 5 In October 2012, after hearing argument but not taking evidence on transfer, the court found good cause to retain jurisdiction and denied mother's motion. Then, following a two-day hearing, the juvenile court entered judgment terminating mother's and father's parental rights.

## II. Transfer of Jurisdiction

¶ 6 Mother and father contend the juvenile court erred by finding good cause to deny transfer of jurisdiction. We discern no error by the court and further conclude that father waived this argument.

¶ 7 Under the ICWA, the state and the tribe have concurrent jurisdiction over Indian children who live off the reservation. *People in Interest of J.L.P.*, 870 P.2d 1252, 1256 (Colo.App.1994). The tribal court, however, is the preferred jurisdiction, and in the absence of good cause, upon request of "[e]ither parent, the Indian custodian, or the Indian child's tribe" the state court must transfer jurisdiction to the tribe. 25 U.S.C. § 1911(b); *People in Interest of A.T.W.S.*, 899 P.2d 223, 224–25 (Colo.App.1994); *J.L.P.*, 870 P.2d at 1256.

¶ 8 Although the ICWA does not define good cause to deny transfer, the Bureau of Indian Affairs (BIA) has issued guidelines for determining whether good cause exists. Guidelines for State Courts—Indian Child Custody Proceedings, 44 Fed. Reg. 67,584 (Nov. 26, 1979) (BIA Guidelines). As relevant here, the BIA Guidelines provide that good cause exists if either the proceeding was at an advanced stage when the petition to transfer was received, or the evidence necessary to decide the case could not be adequately presented in the tribal court without undue hardship to the parties or the witnesses. *Id.* at 67,591.

¶ 9 The party opposing transfer of jurisdiction bears the burden of establishing good cause to deny the transfer. *A.T.W.S.*, 899 P.2d at 225. Determining whether good cause exists is within the juvenile court's discretion. *Id.* This determination must be made on a case-by-case basis after consideration of all of the circumstances. *Id.* Review is limited to examining the record to determine whether substantial evidence supports the juvenile court's findings. *J.L.P.*, 870 P.2d at 1256.

¶ 10 We conclude that substantial evidence in the record supports the juvenile court's findings of good cause to deny transfer because the proceeding was at an advanced stage and the evidence necessary to decide the case could not be adequately presented in the tribal court without undue hardship to the parties or the witnesses.

### A. Advanced Stage

¶ 11 The BIA Guidelines commentary for the advanced stage subsection provides:

Although the Act does not explicitly require transfer petitions to be timely, it does authorize the court to refuse to transfer a case for good cause. When a party

who could have petitioned earlier waits until the case is almost complete to ask that it be transferred to another court and retried, good cause exists to deny the request.

Timeliness is a proven weapon of the courts against disruption caused by negligence or obstructionist tactics on the part of counsel. If a transfer petition must be honored at any point before judgment, a party could wait to see how the trial is going in state court and then obtain another trial if it appears the other side will win. Delaying a transfer request could be used as a tactic to wear down the other side by requiring the case be tried twice. The Act was not intended to authorize such tactics and the "good cause" provision is ample authority for the court to prevent them.

44 Fed. Reg. at 67,590.

¶ 12 Several courts have held that delay in requesting a transfer may constitute good cause to deny the transfer. *In Interest of J.W.*, 528 N.W.2d 657, 660 (Iowa Ct.App. 1995) (motion to transfer was filed three and one half years after tribe received notice); *In re M.H.*, 2011 IL App (1st) 110196, 353 Ill. Dec. 648, 956 N.E.2d 510, 522 (tribe moved to transfer more than fifteen months after receiving notice); *In re M.F.*, 41 Kan.App.2d 927, 206 P.3d 57, 62 (2009) (moved to transfer fifteen months after the proceedings began), *aff'd*, 290 Kan. 142, 225 P.3d 1177 (2010); *In re Wayne R.N.*, 107 N.M. 341, 757 P.2d 1333, 1335–36 (N.M.Ct.App.1988) (upholding denial of request to transfer that was made on the morning of trial, six months after parents were served with notice of proceedings); *In re Dependency & Neglect of A.L.*, 442 N.W.2d 233, 237 (S.D.1989) (upholding denial of request to transfer due to untimeliness where request was filed one year after tribe received notice); *see also In re Robert T.*, 200 Cal.App.3d 657, 665, 246 Cal.Rptr. 168, 174 (1988) (good cause to deny transfer found based on sixteen-month delay between the permanency planning hearing and the tribe's request to transfer); *but see J.L.P.*, 870 P.2d at 1258 (request to transfer was timely despite one-year delay between when tribe received notice and requested transfer).

¶ 13 Several courts have also held that good cause to deny transfer exists if substantial steps to terminate parental rights had been taken before the transfer request. *Robert T.*, 200 Cal.App.3d at 665, 246 Cal. Rptr. at 173 (a request to transfer should precede permanency planning in dependency proceedings); *A.T.W.S.*, 899 P.2d at 226 (case was at advanced stage where department had filed a motion to terminate parental rights and foster parents had moved for a permanency planning hearing); *J.W.*, 528 N.W.2d at 661 (case was at advanced stage where parent requested transfer after judgment to terminate her parental rights had been entered and appealed); *M.H.*, 353 Ill. Dec. 648, 956 N.E.2d at 523 (case was at advanced stage where court had held adjudication, disposition, and permanency hearings before tribe's request for transfer); *M.F.*, 206 P.3d at 62 (case was at advanced stage where permanency plan and motion to terminate had been filed); *Wayne R.N.*, 757 P.2d at 1334 (request for transfer occurred after motion to terminate had been filed); *cf. In re Interest of Zylena R.*, 284 Neb. 834, 825 N.W.2d 173, 184 (2012) (case was not at advanced stage where the tribe requested a transfer one month prior to filing of motion to terminate).

¶ 14 Here, approximately eight months passed from the time the Tribe received notice of the proceedings until mother moved for transfer. During this time, the juvenile court adjudicated T.E.R. dependent and neglected; the court held a dispositional hearing at which it adopted treatment plans for mother and father; the court held a permanency planning hearing; the court held three review hearings; the GAL told the parties that she would be seeking to terminate mother's parental rights; the Tribe was allowed to intervene; and the Department moved to terminate mother's parental rights. Despite knowing that in April 2012 the GAL intended to seek termination and the Tribe had intervened in May 2012, mother waited until after the Department moved to terminate her parental rights before seeking a transfer.

¶ 15 The juvenile court concluded that by the time mother moved to transfer, the case

was at an advanced stage. The record supports this conclusion.

¶ 16 Nevertheless, mother contends that by considering the expedited permanency planning (EPP) provisions, the court improperly compressed the advanced stage analysis. §§ 19–1–102(1.6), 19–1–123, 19–3–703, C.R.S. 2012; *People in Interest of M.T.*, 121 P.3d 309, 313 (Colo.App.2005) (the EPP provisions apply to children less than six years old when removed from the home and require placement in a permanent home within twelve months). We reject this contention.

¶ 17 The juvenile court noted that, "[i]n an EPP case, the Court believes that it is necessary to look at the timeframes given by the EPP statutes in deciding what's undue delay." However, the court made no findings regarding T.E.R.'s age, his removal from the home, and whether he should be placed in a permanent home. The court's ruling does not indicate that it relied on the EPP provisions to find that the case was at an advanced stage.

¶ 18 Accordingly, we conclude that substantial evidence supports the court's finding that the case was at an advanced stage.

## B.  Undue Hardship

¶ 19 The BIA Guidelines commentary for the undue hardship subsection provides:

> Consideration of whether or not the case can be properly tried in tribal court without hardship to the parties or witnesses was included on the strength of the section-by-section analysis in the House Report on the Act, which stated with respect to the § 19–11(b), "The subsection is intended to permit a state court to apply a modified doctrine of *forum non conveniens,* in appropriate cases, to insure that the rights of the child as an Indian, the Indian parents or custodian, and the tribe are fully protected."
>
> Application of this criterion will tend to limit transfers to cases involving Indian children who do not live very far from the reservation.

44 Fed. Reg. at 67,591.

¶ 20 Consistent with the commentary, this subsection has been interpreted by courts to apply a modified forum non conveniens doctrine. *Ex parte C.L.J.*, 946 So.2d 880 (Ala. Civ.App.2006); *In re Adoption of S.S.*, 167 Ill.2d 250, 212 Ill.Dec. 590, 657 N.E.2d 935 (1995); *In re C.E.H.*, 837 S.W.2d 947 (Mo.Ct. App.1992); *In re Melaya F.*, 19 Neb.App. 235, 810 N.W.2d 429 (2011); *Wayne R.N.*, 757 P.2d 1333; *Chester County Dep't of Social Servs. v. Coleman*, 303 S.C. 226, 399 S.E.2d 773 (1990); *People in Interest of J.J.*, 454 N.W.2d 317 (S.D.1990); *Yavapai–Apache Tribe v. Mejia*, 906 S.W.2d 152 (Tex.App. 1995). Thus, the state court determines whether the tribal court is an inconvenient forum, and if so, good cause exists to deny transfer. *Yavapai–Apache*, 906 S.W.2d at 165.

¶ 21 Several courts have held that "[g]ood cause to deny transfer of the proceedings to the tribal court may arise from geographical obstacles." *In Interest of J.R.H.*, 358 N.W.2d 311, 317 (Iowa 1984); *In re T.S.*, 245 Mont. 242, 801 P.2d 77, 82 (1990) (undue hardship found where parties, witnesses, and evidence were located in Montana but would be required to travel to tribal court in Alaska); *Wayne R.N.*, 757 P.2d at 1336 (good cause found where parties and witnesses were located in New Mexico and "would be forced to travel to Oklahoma, at considerable expense and difficulty"); *Chester*, 399 S.E.2d at 776 (good cause found where evidence and witnesses were located in South Carolina and would be required to travel to tribal court in South Dakota); *J.J.*, 454 N.W.2d at 330 (undue hardship found where all witnesses resided in South Dakota and would be required to travel to North Dakota to participate in the proceedings).

¶ 22 Here, the record shows that mother moved to Michigan in July 2012, and proceedings following a transfer of jurisdiction to tribal court would occur in Michigan. But T.E.R., the foster family, and the service providers, as well as records regarding T.E.R. and the Department's involvement, were located in Colorado. Based on this evidence, the juvenile court concluded that because mother was the only party not in Colorado, traveling to Michigan to participate in tribal court hearings would be an undue hardship to the parties and witnesses.

¶ 23 Accordingly, we conclude that substantial evidence supports the juvenile court's finding that a transfer would cause undue hardship to the parties and witnesses.

### C. Evidentiary Hearing

¶ 24 Mother's argument that the court erred by not conducting an evidentiary hearing before it denied transfer is unpersuasive.

¶ 25 The BIA Guidelines provide that if a party asserts good cause to deny transfer, the reasons shall be stated in writing and made available to the parties who are petitioning for transfer. 44 Fed. Reg. 67, 590. The petitioners shall have the opportunity to provide the court with their views on whether good cause to deny transfer exists. *Id.* at 67,590–91. Where transfer may be denied on the ground of good cause, "all parties need an opportunity to present their views to the court." *Id.* at 67,591. The BIA Guidelines do not require an evidentiary hearing.

¶ 26 Here, mother did not request an evidentiary hearing. Mother, the Department, and the GAL briefed transfer of jurisdiction and offered argument at the transfer hearing. During the hearing, mother did not object to anything argued by the Department or the GAL on the basis that supporting evidence must be presented. Before ruling, the court considered the parties' arguments, their written motions and responses, and the court record. Thus, consistent with the BIA Guidelines, mother was given an opportunity to respond to the Department's and the GAL's objections to a transfer of jurisdiction and present her views to the court. And to the extent that she now argues an evidentiary hearing was required before the juvenile court could rule, she has waived this argument. *In re Marriage of Ensminger,* 209 P.3d 1163, 1167 (Colo.App.2008) (failure to make a timely request for a hearing waives the right to a hearing).

### D. Legal Standard

¶ 27 Mother's contention that the court erred by not articulating the standard it applied to deny transfer is also unpersuasive.

¶ 28 The party opposing the transfer must establish good cause with clear and convincing evidence that the best interests of the child would be injured by such a transfer. *J.L.P.,* 870 P.2d at 1257.

¶ 29 Here, the juvenile court made no specific reference to the clear and convincing evidence standard, which would be the better practice. However, mother's counsel cited to *J.L.P.,* which discusses the standard to be applied, and the court noted that it had reviewed *J.L.P.* in making its decision. *See People in Interest of S.G.,* 91 P.3d 443, 449 (Colo.App.2004) ("Trial judges are presumed to know the law and to apply it in making their decisions." (quoting *People v. White,* 870 P.2d 424, 440 (Colo.1994))).

### E. Father

¶ 30 Lastly, we decline to address father's argument regarding the transfer of jurisdiction because he failed to raise it in the juvenile court. *People in Interest of K.L–P.,* 148 P.3d 402, 403 (Colo.App.2006) (arguments never presented to, considered by, or ruled on by the trial court may not be raised for the first time on appeal). Father did not brief the issue before the transfer hearing and, at the hearing, he had "no position" on this issue. Thus, this argument is waived. *Id.*

### III. Father—Active Efforts

¶ 31 Father contends the Department failed to provide "active efforts" as required under the ICWA. We disagree.

¶ 32 Under 25 U.S.C. section 1912(d), any party seeking to terminate parental rights to an Indian child "shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful."

¶ 33 The ICWA's active efforts standard requires more than the "reasonable efforts" standard under section 19–3–604(2)(h), C.R.S. 2012, in non-ICWA cases. *People in Interest of A.R.,* 2012 COA 195, ¶ 29, 310 P.3d 1007, 2012 WL 5457416. Nonetheless, active efforts under the ICWA

does not mean persisting with futile efforts. *People in Interest of A.V.*, 2012 COA 210, ¶ 12, 297 P.3d 1019. The court may consider a parent's unwillingness to participate in treatment as a factor in determining whether the Department made active efforts. *Id.*

¶ 34 Whether the Department made adequate active efforts is a mixed question of fact and law. *Id.* at ¶ 13. We review the juvenile court's factual findings for abuse of discretion and we review the legal issues de novo. *Id.*

¶ 35 Here, father was incarcerated during most of the case. After he was initially released, the Department scheduled a mental health evaluation, which was required under the treatment plan. The evaluation was scheduled three times because father either failed to attend or was re-incarcerated. Father did not complete the evaluation. The Department also referred him for a substance abuse evaluation, which he did not complete.

¶ 36 Also, the Department made two diligent searches in September 2011 and May 2012 to locate family members who could be potential placement options for T.E.R. The caseworker initiated three home studies for father's relatives.

¶ 37 Lastly, the caseworker contacted and coordinated with father's probation officer. She opined that because of father's incarceration, there were no other efforts that she could have provided to assist him with his treatment plan.

¶ 38 The juvenile court found that the Department made active efforts.

¶ 39 Accordingly, we conclude that the record supports the juvenile court's findings that the Department met the active efforts standard.

¶ 40 The order and judgment are affirmed.

Judge LICHTENSTEIN and Judge FOX concur.