24CA0764 Peo in Interest of JLW 11-21-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0764
Morgan County District Court No. 22JV30004
Honorable Robert C. James, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of J.L.W. and R.D.W., Children,

and Concerning B.W.,

Appellant,

and

T.D.H.,

Appellee.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE MOULTRIE
Welling and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 21, 2024

---

David W. Bute, Assistant County Attorney, Fort Morgan, Colorado, for Appellee
The People of the State of Colorado

Josi McCauley, Guardian Ad Litem

Lindsey Parlin, Office of Respondent Parent's Counsel, Denver, Colorado, for
Appellant

Patrick R. Henson, Office of Respondent Parent's Counsel, Chelsea A. Carr, Office of Respondent Parent's Counsel, Denver, Colorado, for Appellee T.D.H.

¶ 1    In this dependency and neglect action, B.W. (father) appeals the judgment allocating parental responsibilities of J.L.W. and R.D.W. (the children) to T.D.H. (mother).  We affirm.

## I.    Background

¶ 2    In March 2022, the Morgan County Department of Human Services (the Department) filed a petition in dependency and neglect, alleging that the children were exposed to domestic violence and substance use in mother's home.  The juvenile court granted temporary custody of the children — then five and three years old — to father, subject to protective supervision by the Department.

¶ 3    In July 2022, the Department moved for an allocation of parental responsibilities (APR) to father; father filed his own APR motion four months later.  In April 2023, the juvenile court held a multi-day hearing and denied the requests to grant APR to father without prejudice, finding "there's a lot more to be done" before case closure would be appropriate.  Father filed a second motion for an APR in May 2023.

¶ 4    In September 2023, while that APR motion was still pending, the court changed the children's primary residence from father's

1

home to mother's home after it determined that father was not following orders concerning protective supervision of the children. The Department and mother filed APR motions requesting that mother and father have joint legal and physical custody and that mother be "designated primary residential custodian."

¶ 5 A contested APR hearing concluded in November 2023, twenty months after the filing of the petition. In a detailed oral order, the juvenile court, as relevant here, (1) granted mother sole decision-making for education and medical matters; (2) granted mother and father joint decision-making for religious and extracurricular activities; (3) designated mother as the primary residence for the children during the school year; and (4) granted father parenting time from Friday after school to Monday evenings and every other week during the summer. The court also prohibited father from consuming or having alcohol in his home while the children were in his care and either party from changing their residence with the children without agreement or court order.

¶ 6 In February 2024, the guardian ad litem (GAL) moved to reopen evidence under C.R.C.P. 59 because mother planned to move to another city and there were allegations that father had

retaliated against a witness following the APR hearing.  During a hearing on the GAL's motion, the juvenile court also heard evidence that father was not in compliance with its earlier orders requiring him to maintain sobriety during family time.  The juvenile court ordered a three-phase plan that gave father "the opportunity to get back to the plan we had in ninety days."  The plan began with supervised family time for father, which would expand after thirty days of documented sobriety.

¶ 7 The parties returned for a status conference at the end of March 2024.  The juvenile court adopted an APR order that began with the three-phase plan from February 2024 and incorporated the November 2023 oral order as the final phase of the plan.  The court certified the APR into a domestic relations case and closed the dependency and neglect action.

¶ 8 Father appeals, contending that the juvenile court abused its discretion by making mother the children's primary residential custodian because the evidence was insufficient to support that determination.

## II. Standard of Review and Applicable Law

¶ 9     The juvenile court has exclusive authority to determine the legal custody of, or enter an APR judgment with respect to, a child within its jurisdiction. § 19-1-104(1)(c), C.R.S. 2024; *L.A.G. v. People in Interest of A.A.G.*, 912 P.2d 1385, 1389 (Colo. 1996).

¶ 10    Allocating parental responsibilities is a matter within the sound discretion of the juvenile court. *See In re Parental Responsibilities Concerning B.R.D.*, 2012 COA 63, ¶ 15. The juvenile court abuses its discretion when its decision is manifestly arbitrary, unreasonable or unfair. *M.A.W. v. People*, 2020 CO 11, ¶ 32. "In weighing sufficiency of the evidence, we review the record in the light most favorable to the prevailing party and draw every inference fairly deducible from the evidence in favor of the court's decision." *People ex rel. L.B.*, 254 P.3d 1203, 1208 (Colo. App. 2011). When there is record support for the juvenile court's findings, its resolution of conflicting evidence is binding on review. *B.R.D.*, ¶ 15.

## III. Additional Time

¶ 11    As a preliminary matter, we decline to address father's contention that he did not receive sufficient time to address the

juvenile court's concerns. Father argues that the court should have kept the case open in juvenile court to monitor a return to an equal parenting time arrangement. But father never asked the court for more time or to keep the dependency and neglect action open longer so he could comply with the February 2024 orders. Accordingly, we will not consider this contention on appeal. *See People in Interest of T.E.R.,* 2013 COA 73, ¶ 30 (generally, issues not raised in the trial court will not be considered on appeal.)

## IV.  Sufficiency of the Evidence

¶ 12    Father's sole remaining issue is that "the evidence presented during the contested hearing would not have supported the juvenile court's decision to abruptly change shared custody between the parents to essentially sole custody to mother."

¶ 13    The juvenile court held two contested hearings, one in November 2023 and another in February 2024, resulting in decision-making and parenting time orders supported by combined findings from both hearings.

¶ 14    Construing father's "custody" argument as a challenge to the sufficiency of the evidence supporting the juvenile court's decision-making orders — which were identical in November 2023

and March 2024 — we determine that the record supports the court's decision to make mother the primary residential custodian and sole decision-maker for educational and medical issues. At the November 2023 hearing, the caseworker recommended that the children primarily reside with mother "because she has the ability and follows through" with the children's medical, dental, vison, and therapeutic providers. The caseworker also testified that mother had demonstrated "commitment to [the children's] education and school piece."

¶ 15    Additionally, testimony at both hearings suggested that the parties could not consistently make joint decisions. Father did not regularly communicate with the Department, mother, the children's school, or the children's providers. The caseworker cautioned against putting mother in difficult positions with father because of a history of domestic violence in the relationship. The caseworker opined that mother "should have final say because she's been the one that follows through and puts the best interests [of the children] first."

¶ 16    To the extent that father contends that the court erred by restricting his family time in the February and March 2024 orders,

6

we discern no error. The juvenile court found that "alcohol is negatively affecting what [father was] doing . . . [and] it's also negatively affecting the kids." The court ordered father to have supervised or monitored family time, wear a device to monitor his sobriety, and not have alcohol in the home for thirty days.

¶ 17 The evidence supports these restrictions being necessary for the children's health and safety and in the children's best interests. At the November 2023 hearing, the caseworker testified that the Department "struggled trying to get [father] to cooperate" and had concerns about father's sobriety. At the February 2024 hearing, father's probation officer testified that he found multiple open bottles of alcohol, a case of beer, and marijuana in the home during an unannounced visit. The caseworker testified that father was scheduled to pick the children up for family time the evening of the probation officer's home visit. The caseworker also testified that a new referral was made to the Department after the children reported that father was drinking more, "getting meaner and meaner," and "slug[ging] [J.L.W.] in the stomach on purpose."

¶ 18 Although the juvenile court gave father clear steps to address these concerns, pleadings filed in anticipation of the March 2024

7

status conference alleged that father did not obtain the sobriety monitoring device and was not responding to the Department or mother to set up supervised or monitored family time with the children. Father did not appear at the March 2024 status conference and did not present evidence through his counsel. The record therefore supports the ongoing restriction of father's parenting time to supervised contact and the incorporation of the phased plan supporting father's return to the unsupervised parenting time schedule originally ordered in November 2023.

¶ 19     Finally, we note that the record does not support father's assertion that shared custody was "abruptly changed" with respect to either parenting time or decision-making. By the time the juvenile court entered the final APR order, mother had been the children's primary residential custodian for five months. The week-on, week-off schedule that father advocated for during the November 2023 and February 2024 hearings hadn't been in place for more than two years. Testimony at both the November 2023 and February 2024 hearings supported the court's determination that a week-on, week-off schedule was not in the children's best interests during the school year. Mother testified that when the

week-on, week-off schedule was in effect, the children weren't getting to school or completing schoolwork on the weeks that they were with father. The caseworker testified that the children struggled behaviorally after being at father's home. The caseworker opined that the week-on, week-off schedule was difficult for the children and should not be reinstated. Even so, the parenting time schedule in the APR order certified to the domestic relations court provided for equal parenting time between mother and father, so long as father demonstrated sobriety and came into compliance with probation.

¶ 20    Because the record supports the juvenile court's findings, we conclude that its APR was not manifestly arbitrary, unreasonable, or unfair.

## V.    Disposition

¶ 21    The judgment is affirmed.

JUDGE WELLING and JUDGE BROWN concur.