24CA0920 Peo in Interest of ALH 01-30-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0920
Mesa County District Court No. 22JV88
Honorable Brian J. Flynn, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of A.L.H., a Child,

and Concerning C.R.H.,

Appellant.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE BROWN
Welling and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 30, 2025

---

Todd M. Starr, County Attorney, Brad Junge, Assistant County Attorney, Grand Junction, Colorado, for Appellee

Josie L. Burt, Guardian Ad Litem

Patrick R. Henson, Office of Respondent Parents' Counsel, Justin Twardowski, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1    In this dependency and neglect action, C.R.H. (mother) appeals the judgment terminating her parent-child legal relationship with A.L.H. (the child).  We affirm.

## I.    Background

¶ 2    The Mesa County Department of Human Services (the Department) received a referral about the then-newborn child based on mother's report that she used fentanyl throughout her pregnancy.  The Department filed a petition in dependency and neglect, additionally alleging that the child had tested positive for illegal substances at birth and that mother had left the hospital shortly after the child's transfer to the neonatal intensive care unit, leaving the child without a medical decision-maker.

¶ 3    The juvenile court adjudicated the child dependent and neglected and adopted a treatment plan for mother.  The Department later moved to terminate mother's parental rights.  Twenty months after the petition was filed, the juvenile court terminated mother's parental rights following a contested hearing.

## II.    Termination Criteria and Standard of Review

¶ 4    Under 19-3-604(1)(c), C.R.S. 2024, the juvenile court may terminate parental rights if it finds, by clear and convincing

1

evidence, that (1) the child was adjudicated dependent and neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan was not successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time.

¶ 5     Whether a juvenile court properly terminated parental rights presents a mixed question of law and fact because it involves application of the termination statute to evidentiary facts. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15. Determining the credibility of the witnesses — as well as the sufficiency, probative effect, and weight of the evidence and the inferences and conclusions to be drawn from it — is within the juvenile court's' province. *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 10. We will not disturb the court's factual findings if evidence in the record supports them. *A.M.*, ¶ 15. But determining the proper legal standard to be applied in a case and whether the court properly applied that standard to the particular facts of the case are questions of law that we review de novo. *M.A.W. v. People in Interest of A.L.W.*, 2020 CO 11, ¶ 31.

2

### III. Reasonable Efforts

¶ 6 Mother contends that the Department failed to make reasonable efforts to rehabilitate her when it did not comply with the "case contact requirements" set forth in the rules promulgated by the Colorado Department of Human Services in Volume 7. Dep't of Hum. Servs. Reg. 7.204(B)(1), 12 Code Colo. Regs. 2509-3. We discern no basis for reversal.

### A. Preservation

¶ 7 The Department and guardian ad litem contend that mother failed to preserve the reasonable efforts issue she raises on appeal. We agree in part.

¶ 8 Issues not raised in the juvenile court may not be raised for the first time on appeal. *People in Interest of T.E.R.*, 2013 COA 73, ¶ 30. An issue is not preserved for review when, among other things, "an objection or request was made in the trial court . . . on unspecific grounds which would not have alerted the trial court to the issue of which the [party] now seeks review." *People v. Ujaama*, 2012 COA 36, ¶ 37 (citations omitted). However, divisions of this court have addressed claims challenging the sufficiency of the evidence supporting the termination criteria regardless of whether a

3

parent raised the same challenge before the juvenile court. *See*

*People in Interest of S.N-V.*, 300 P.3d 911, 913 (Colo. App. 2011).

¶ 9     On appeal, mother contends that the Department is required

by Volume 7 to make "monthly efforts to engage [parents] through

telephone calls, letters, or electronic communication" and, except in

limited circumstances, to have "face-to-face contact" with parents at

least once a month. Dep't of Hum. Servs. Reg. 7.204(B)(1), (2), 12

Code Colo. Regs. 2509-3. She further contends that, because the

Department failed to meet with her face-to-face each month during

the pendency of the case, the juvenile court erred by finding that

the Department made reasonable efforts.

¶ 10    In her closing argument at the termination hearing, mother's

counsel argued that there was a "lack of reasonable efforts in this

case." Without referencing any authority, counsel also argued that

mother and the Department were "[c]ourt [o]rdered to meet

monthly." But mother's counsel never directed the juvenile court to

Volume 7 or suggested that Volume 7 should be considered as part

of the court's reasonable efforts analysis. Nor did mother question

the caseworker about Volume 7 or its requirements for contact with

a parent. Indeed, "Volume 7" appears nowhere in the transcript from the termination hearing.

¶ 11     These circumstances "would not have alerted the trial court to the issue" mother now asks us to review. *Ujaama*, ¶ 37. Because the juvenile court was not "presented with an adequate opportunity to make findings of fact and conclusions of law" on the applicability of Volume 7 to the Department's obligation to provide reasonable efforts, we decline to address that portion of mother's argument. *See People v. Melendez*, 102 P.3d 315, 322 (Colo. 2004) ("We do not require that parties use 'talismanic language' to preserve particular arguments for appeal, but the trial court must be presented with an adequate opportunity to make findings of fact and conclusions of law on any issue before we will review it.").

¶ 12     However, because the Children's Code required the juvenile court to find that the Department made reasonable efforts to rehabilitate mother before it terminated her parental rights, *see* § 19-3-604(1)(c)(II), (2)(h), C.R.S. 2024, we will review mother's argument as one generally challenging the court's reasonable efforts finding. *See S.N-V.*, 300 P.3d at 913.

## B. Applicable Law

¶ 13    Before a juvenile court may terminate parental rights under section 19-3-604(1)(c), it must find that the county department of human services made reasonable efforts to rehabilitate parents. §§ 19-1-103(114), 19-3-100.5(1), 19-3-208, 19-3-604(2)(h), C.R.S. 2024. Under the Children's Code, reasonable efforts mean the "exercise of diligence and care . . . for children and youth who are in foster care or out-of-home placement." § 19-1-103(114). In determining whether to provide services "and in making reasonable efforts, the child's or youth's health and safety are the paramount concern." *Id.*

¶ 14    The Children's Code provides a list of minimal services that must be provided to a parent whose child is in out-of-home placement during a dependency and neglect action. *S.Z.S.,* ¶ 13. Services provided in accordance with section 19-3-208 satisfy the reasonable efforts standard. § 19-1-103(114). The services that "must be available and provided" as determined by individual case planning include, among others, screening, assessment, home-based family and crisis counseling, information and referral services to assistance resources, family time, and placement services. § 19-

6

3-208(2)(b). Additional services may be required if funding is available, including transportation, childcare, diagnostic and mental health services, drug and alcohol treatment services, and family support services. § 19-3-208(2)(d).

¶ 15 To evaluate whether a department made reasonable efforts, the juvenile court considers whether the services provided were appropriate to support the parent's treatment plan. *S.N-V.*, 300 P.3d at 915. But the parent is ultimately responsible for using those services to obtain the assistance needed to comply with the treatment plan. *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011). The court may therefore consider a parent's unwillingness to participate in treatment when determining whether a department made reasonable efforts. *See People in Interest of A.V.*, 2012 COA 210, ¶ 12.

¶ 16 Whether a department satisfied its obligation to make reasonable efforts is a mixed question of fact and law. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8. We review the juvenile court's factual findings for clear error but review de novo the court's legal determination, based on those findings, as to whether the Department satisfied its reasonable efforts obligation. *Id.*

7

## C.    Analysis

¶ 17    The Department devised an appropriate treatment plan for mother, provided referrals for mental health and substance dependence services, provided information about housing and inpatient substance dependence programs, attempted to coordinate family time, and facilitated placement services for the child. Notwithstanding the availability of services, mother participated in only two family time sessions and did not engage in any mental health or substance dependence treatment. Mother did not respond to outreach attempts by the caseworker or attend meetings that mother scheduled. At the time of the termination hearing, mother had not participated in available family time with the eighteen-month-old child for more than a year.

¶ 18    Despite this evidence, mother contends that the Department failed to make reasonable efforts because it did not meet with her monthly as allegedly required by Volume 7. As noted, mother did not preserve her argument that the Department had to comply with Volume 7 to meet its reasonable efforts obligation. Even so, we are not persuaded that the Department's efforts to contact mother were insufficient.

¶ 19 The caseworker testified that, except when mother was incarcerated, her location was unknown throughout the duration of the dependency and neglect action. The caseworker texted, called, and emailed mother, but she rarely got any response. Although the caseworker scheduled multiple meetings, mother attended only one, six months after the child was born and the dependency and neglect action opened. When mother was incarcerated in the middle of the case, the caseworker attempted to see her every month, although there were times the jail would not permit a visit. Mother was also incarcerated at the time of the termination hearing. Although the caseworker admitted that she had not attempted to visit mother during her most recent incarceration, she had been aware of mother's in custody status for less than a month.[1] Mother does not articulate what more the caseworker could have done to locate her when she was out of custody, nor

---

[1] Even assuming the Department was required to comply with the monthly case contact requirements in Volume 7, the rule includes an exception when a parent's "whereabouts are not known despite efforts to locate the parent/guardian." *See* Dep't of Hum. Servs. Reg. 7.204(B)(1), (2), 12 Code Colo. Regs. 2509-3. Because mother did not raise the applicability of Volume 7 before the juvenile court, we do not know whether this exception might have excused any technical non-compliance by the Department.

does she suggest how successful monthly contact would have impacted her participation in any of the elements of her treatment plan.

¶ 20     Whether a department made reasonable efforts "must be measured holistically rather than in isolation with respect to specific treatment plan objectives." *People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 35. Under the circumstances presented, we cannot conclude that the Department failed to provide reasonable efforts, and we will not disturb the juvenile court's findings or its legal conclusion.

## IV.     Fit Within a Reasonable Time

¶ 21     Mother next contends that the juvenile court erred by finding that her conduct or condition was unlikely to improve within a reasonable time. Although mother styles her argument for additional time as a less drastic alternative, she does not propose an alternative permanency option that would resolve the dependency and neglect case. *See People in Interest of A.R.*, 2012 COA 195M, ¶ 44 (the less drastic alternative analysis involves the consideration of whether a placement alternative — such as an allocation of parental responsibilities — would satisfy the child's

best interests). Thus, we focus our discussion on whether clear and convincing evidence supported the juvenile court's conclusion that mother's condition was unlikely to improve within a reasonable time.

## A. Applicable Law

¶ 22 An unfit parent is one whose conduct or condition renders her unable or unwilling to give a child reasonable parental care. *S.Z.S.*, ¶ 23. Reasonable parental care requires, at a minimum, that the parent provide nurturing and safe parenting adequate to meet the child's physical, mental, and emotional conditions and needs. *Id.*

¶ 23 In determining whether a parent can become fit within a reasonable time, the juvenile court may consider whether any changes occurred during the dependency and neglect proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition. *Id.* at ¶ 24. A reasonable time is not indefinite and must be determined by considering the child's physical, mental, and emotional conditions and needs. *Id.* at ¶ 25. What constitutes a reasonable time is fact-specific and varies from case to case. *Id.*

## B. Analysis

¶ 24 The juvenile court found that mother was not likely to become fit in a reasonable time because she "had well over one year to become fit" and had "a substantial distance to travel before [she] would be fit to parent [the child]." The court found that mother did not comply with the treatment plan because she did not participate in mental health or substance abuse assessments, did not maintain contact with the caseworker, did not obtain employment, and last participated in family time with the child more than a year before the termination hearing. The record supports these findings. The caseworker testified that mother did not participate in any part of the treatment plan, nor "expresse[d] the desire to become [a parent] in a reasonable amount of time."

¶ 25 Importantly, the court found that there was no additional time that would be reasonable for the child to wait for mother to become fit because it was "essential to [his] wellbeing that he be in a permanent home as soon as possible." The record also supports this finding. The caseworker, an expert in child protection and welfare, testified that the child was very young (a little over eighteen months), and the dependency action had been open his entire life.

12

The caseworker opined that the child needed permanency in a "safe and stable environment that is able to provide [for] all of his needs. And, at this point, I do not believe that is [mother]."

¶ 26    We discern no error in the juvenile court's finding that mother could not become fit within a reasonable period of time.

## V.    The Indian Child Welfare Act

¶ 27    Mother appears to question, without developing an argument, whether the Department should have sent notices of the termination hearing to certain tribes in compliance with the Indian Child Welfare Act.  *See* 25 U.S.C. § 1912(a).  Before the termination hearing, father's counsel asserted possible Native American heritage based only on a review of the casefile.  However, at the termination hearing, both mother and paternal aunt denied having information about any tribal affiliation for the child.  Our review of the record confirms the juvenile court's finding that there was no reason to know the child was an Indian child.  Therefore, the Department did not have an obligation to provide notices to any tribe.  *People in Interest of E.A.M.*, 2022 CO 42, ¶¶ 20, 56 (holding that assertions of Native American heritage are not enough to give a court "reason to know," and the Department has an obligation to provide notice of

the proceedings only when the court "knows or has reason to know" that a child is an Indian child).

## VI.  Disposition

¶ 28    The judgment is affirmed.

JUDGE WELLING and JUDGE MOULTRIE concur.