24CA1585 Peo in Interest of NEM 02-06-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1585
Conejos County District Court No. 23JV30007
Honorable Crista Newmyer-Olsen, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of N.E.M., a Child,

and Concerning B.R.A.,

Appellant.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE SCHUTZ
Welling and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 6, 2025

---

Ryan Dunn, County Attorney, Del Norte, Colorado, for Appellee

Jenna L. Mazzucca, Guardian Ad Litem

Beth Padilla, Office of Respondent Parent's Counsel, Durango, Colorado, for Appellant

¶ 1     In this dependency and neglect action, B.A. (father) appeals the judgment terminating his parent-child legal relationship with N.E.M. (the child).  We affirm.

## I.     Background

¶ 2     In August 2023, the Conejos County Department of Social Services (the Department) filed a petition in dependency and neglect, alleging that M.M. (mother) could not be located and the then-newborn child needed treatment for substance exposure and a communicable disease.  The juvenile court granted temporary custody of the child to the Department.  The child was discharged from the neonatal intensive care unit in September 2023 and placed in foster care, where she remained for the duration of the case.

¶ 3     At the beginning of the case, mother provided information about multiple possible fathers, and the juvenile court ordered genetic testing.  Although father was subject to this order, he did not complete genetic testing until November 2023, three months after the child was born.

¶ 4     The juvenile court adjudicated the child dependent or neglected as to mother in October 2023, and father in February 2024.  The court adopted treatment plans for both parents.  The

1

Department moved to terminate parental rights in April 2024. Mother confessed the motion and is not part of this appeal.

¶ 5 Following a contested evidentiary hearing in July 2024, the juvenile court terminated father's parental rights, finding that father had abandoned the child and that he failed to comply with an appropriate treatment plan under section 19-3-604(1)(a) and (c), C.R.S. 2024.

## II. Reasonable Period of Time

¶ 6 Father contends the juvenile court erred by terminating his parental rights under section 19-3-604(1)(c) because he did not have adequate time to comply with the treatment plan and if he had been provided with adequate time, he could have become fit within a reasonable time. We disagree.

### A. Preservation

¶ 7 The Department and the child's guardian ad litem argue that father's reasonable time argument was not preserved. We disagree.

¶ 8 During closing argument, father asserted that he should be "given a reasonable amount of time to fully regain his parental fitness." We do not discern a meaningful distinction between father's argument to the juvenile court and his contention before us

2

now.  *See Brown v. Am. Standard Ins. Co. of Wis.*, 2019 COA 11, ¶ 21 ("If a party raises an argument to such a degree that the court has the opportunity to rule on it, that argument is preserved for appeal.").  We therefore conclude the issue is preserved and turn to the merits of father's contention.

### B. Applicable Law and Standard of Review

¶ 9    A juvenile court may terminate a parental relationship if the child has been adjudicated dependent or neglected, the parent has not reasonably complied with an appropriate treatment plan approved by the court, the parent is unfit, and the parent's conduct is unlikely to change within a reasonable time. § 19-3-604(1)(c)(i)(II).

¶ 10    An unfit parent is one whose conduct or condition renders them "unable or unwilling to give the child reasonable parental care to include, at a minimum, nurturing and safe parenting sufficiently adequate to meet the child's physical, emotional, and mental health needs and conditions." § 19-3-604(2).  In determining whether a parent's conduct or condition is likely to change within a reasonable time, "the court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic

3

or long-term nature of the parent's conduct or condition." *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 24.

¶ 11 Once the district court approves an appropriate treatment plan, a parent must be provided with a reasonable time to comply with the plan. *People in Interest of D.Y.*, 176 P.3d 874, 876 (Colo. App. 2007). What constitutes a reasonable time to comply with a treatment plan is fact specific and varies from case to case. *Id.* When determining a reasonable period of time, the court may consider the physical, mental, and emotional conditions and needs of each particular child. *S.Z.S.*, ¶ 25. When, as here, a child is under six years old at the time a petition is filed, the action is subject to the expedited permanency planning provisions, and the court must consider the child's need to be placed in a permanent home as expeditiously as possible. §§ 19-1-102(1.6), 19-1-123, C.R.S. 2024.

¶ 12 Whether a juvenile court properly terminated parental rights presents a mixed question of fact and law because it involves application of the termination statute to evidentiary facts. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15. It is for the juvenile court, as the trier of fact, to determine the sufficiency, probative

4

effect, and weight of the evidence and to assess witness credibility. *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010).

¶ 13 "We review the juvenile court's findings of evidentiary fact — the raw, historical data underlying the controversy — for clear error and accept them if they have record support." *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10. But we review de novo the juvenile court's legal conclusions based on those facts. *Id.*

### C.   Father's Reliance on *D.Y.*

¶ 14 Relying on *D.Y.*, 176 P.3d at 876-77, father contends that he could not have had sufficient time to comply with the treatment plan because the motion for termination was filed less than seven weeks after the treatment plan was adopted and the treatment plan listed an estimated completion date in January 2025, six months after the termination hearing.

¶ 15 The division in *D.Y.* noted that the termination motion was "filed only weeks after the treatment plan had been adopted" and concluded, based on the circumstances in that case, that the ninety days that father was given to comply with the treatment plan before the termination hearing was not sufficient. *Id.* at 877. The division

5

also noted that the ninety-day period "was at odds with the terms of the treatment plan" adopted by the court. *Id.*

¶ 16　　As the division in *D.Y.* acknowledged, there is no requirement in the Children's Code that treatment plans adopted by the juvenile court contain estimated dates of completion. Nonetheless, because father's treatment plan included a January 2025 completion date, he argues that the timing of the termination and hearing are inconsistent with the plan's estimated completion date. We disagree.

¶ 17　　When the record shows, as it does in this case, that a parent has little inclination to comply with the treatment plan, a trial court may make a decision about the child's permanent placement before the treatment plan's projected date of completion. *See People in Interest of R.B.S.*, 717 P.2d 1004, 1006 (Colo. App. 1986). Thus, we reject the notion that *D.Y.* should be read as holding that a parent is entitled to some specific amount of time before a termination motion may be filed or granted.

¶ 18　　Moreover, *D.Y.* is factually distinguishable from this case. There, the county department "proceeded as if no reasonable treatment plan could be developed" or approved, and advised the

6

juvenile court that it would be moving for termination the day the treatment plan was adopted. *D.Y.*, 176 P.3d at 876-77. But in this case, the record indicates that the Department intended to provide services under the treatment plan but moved for termination because father failed to communicate with either the Department or his counsel for the two months after his release from custody and because of the child's particular significant need for timely permanency.

¶ 19 Furthermore, in *D.Y.* the county department did not make referrals for services to allow the parent to demonstrate compliance with the treatment plan. *Id.* at 877. But in this case, the Department submitted appropriate referrals for substance abuse and mental health treatment, substance use monitoring, and parenting classes. Both the caseworker and the treatment agencies attempted to engage father in these services, but he failed to follow through. The Department also provided opportunities for father to demonstrate sobriety by completing substance use testing; while father completed a few, those tests were largely positive for illegal substances.

¶ 20    In sum, we conclude that the amount of time that passes during a dependency and neglect case, though relevant, is not talismanic.  It is neither an absolute defense to termination nor is it a definitive indication that a parent has failed to reasonably comply with a treatment plan or that the parent cannot become fit within a reasonable period.  Instead, these issues must be assessed on a case-by-case basis in light of the child's unique needs and the parent's ability to meet those needs within a reasonable period of time.  We turn next to that task.

### D.    Analysis

¶ 21    The juvenile court found that the child's needs were "extremely medically complex."  The child needed consistency and strict compliance with the recommendations of her medical providers. The child was an infant when the case opened, spent virtually her entire life with the foster placement, had no relationship with father or mother, and needed permanency.

¶ 22    Father's complete lack of participation in the treatment plan contrasted starkly with the child's compelling needs.  The juvenile court found, with record support, that father did not comply with any treatment plan objective except for limited substance testing;

8

had a "significant substance use disorder" that he failed to address; failed, without good cause, to participate in family time or complete medical training once it was ordered; and failed to make any plans to financially support the child, provide appropriate housing, or "make sure that this child's extreme medical needs continue to be met."

¶ 23 Based on these findings, the court concluded father's lack of progress and social history made it "improbabl[e] that [he] will make any meaningful progress even if additional time is granted." The court also concluded that "continuing the legal relationship between . . . father and the child is likely to result in grave risk of death or serious bodily injury to the child."

¶ 24 The record also supports these findings. The child was treated in the neonatal intensive care unit for the first month of her life. In March of 2023, she experienced serious complications after skull surgery to treat sagittal craniosynostosis. She underwent additional surgeries to install multiple feeding tubes that required regular feeding schedules over eighteen to twenty-four-hour periods. The child also experienced regular "blue spells" during which she stopped breathing, so her heart rate and oxygen levels

had to be constantly monitored. The caseworker testified the child needed a caregiver "to be seriously involved in her . . . daily care. They need to be actively involved in her appointments; actively involved in following up with specialists, doctors."

¶ 25 But father was not actively involved in the child's care, and he did not follow up on the recommended trainings. Father agreed at the termination hearing that he did not participate in any assessments or treatment during the case. He scheduled court-ordered trainings to learn about the child's feeding tubes; however, he failed to attend the required trainings. Indeed, at the time of the termination hearing, father had *never* participated in family time or otherwise even met the child. *See* § 19-3-604(1)(c)(1)(A) ("[T]he court shall not find that a parent is . . . in reasonable compliance with . . . a court-approved treatment plan when [t]he parent has not attended family time with the child . . . as set forth in the treatment plan, unless good cause can be shown for failing to attend.").

¶ 26 In June 2024, father was stabbed and hospitalized for approximately two weeks. Father contends that he was unable to comply with the treatment plan while he was hospitalized. Be that as it may, father's hospitalization occurred less than a month before

the termination hearing, after he had already failed to follow through with the many services offered to him. And at the hearing, father did not testify that he failed to follow through with the requirements of the treatment plan because of his hospitalization, but rather, "because [he] was probably under the influence" and "was being irresponsible."

¶ 27 Given these findings, we perceive no error in the juvenile court's conclusions that father was given a reasonable period of time to complete the treatment plan, and that he was unfit and unlikely to become fit within a reasonable period of time.

### III. Reasonable Efforts

¶ 28 Father next contends that the juvenile court erred by finding that the Department made reasonable efforts. Father concedes that this argument is not preserved but urges us to apply the miscarriage of justice exception to preservation. *See People in Interest of E.S.*, 2021 COA 79, ¶ 14.

¶ 29 The miscarriage of justice exception has a high bar and a narrow scope, applying only to limited situations in which an error by the juvenile court, not otherwise properly preserved for appeal, results in a grossly unfair outcome for the parent. *See People in*

*Interest of M.B.*, 2020 COA 13, ¶¶ 23-24; *see also People in Interest of A.E.*, 914 P.2d 534, 539 (Colo. App. 1996).

¶ 30　　Father does not explain how the juvenile court's reasonable efforts finding created such a result. We, therefore, discern no miscarriage of justice and decline to address this claim for the first time on appeal. *People in Interest of T.E.R.*, 2013 COA 73, ¶ 30.

## IV.　Abandonment

¶ 31　　Finally, father argues that the juvenile court erred by terminating his parental rights under section 19-3-604(1)(a). However, because we affirm the termination of father's rights under section 19-3-604(1)(c), we need not address this contention.

## V.　Disposition

¶ 32　　The judgment is affirmed.

JUDGE WELLING and JUDGE KUHN concur.